VARICK'S EXECUTORS, *appellants*, and BRIGGS and others, *respondents*.

The principal question in this case was as to the *effect of the recording act of* 1813, upon a deed executed in 1802, conveying lands situate in the county of *St. Lawrence.* Senator VERPLANCK, in delivering his opinion for *affirmance*, concurs in the views of the Chancellor as set forth in 6 *Paige*, 327, *et seq.* that this case cannot be considered *within the meaning of the act*, but *dissents* from the opinion of the chancellor in an important particular : *holding* that it is not competent to the legislature to pass an act declaring a deed, which previous to the passage of the act was a good and valid conveyance of lands, fraudulent and void unless recorded previous to the recording of a subsequent deed or conveyance obtained by a *bona fide* purchaser or mortgagee.

APPEAL, from chancery. The appellants filed a bill in chancery to foreclose a mortgage executed to their testator by *Wesson Briggs*, on the 7th February, 1832, of a tract of 1000 acres of land situate in the county of St. Lawrence ; which mortgage was duly recorded. The mortgagor derived his title from *John Tibbits*, by deed bearing date 9th November, 1810, which was duly recorded, and was possessed of the premises until his death in 1831. After his death the bill for the foreclosure of the mortgage was filed, and his children as his heirs at law were made parties defendants. They put in an answer alleging that in the month of *July*, 1801, *John Tibbits*, their maternal grandfather, executed a deed to his daughter, their mother, *Polly Briggs*, the wife of the mortgagor, conveying to her *in fee* the whole of the premises covered by the mortgage except 200 acres which he reserved ; that in August, 1802, the deed of July, 1801, was destroyed and a new deed executed by their grandfather to their mother of the whole tract of 1000 acres. That their mother died in the month of *March*, 1810, and that in the ensuing month of *November*, whilst they were *infants*, their father surrendered the deed of 1802, and took a deed to *himself* of the tract conveyed to their mother. Proofs were taken and the execution of the two deeds to *Polly Briggs* satisfactorily proved, the latter in the month

of *August* or *September*, 1802 ; and the surrender of the deed of 1802, and the execution thereupon of the deed of 1810, to the mortgagor, was shown by the *declarations* of both the grantor and grantee of the last deed.

The principal question in this case arises upon the con-struction of the recording acts. That portion of the state which is now known as the county of *St. Lawrence* was, on the organization of the county of *Oneida*, on the 15th March, 1798, embraced within the bounds of Oneida. *See Statutes of this state* (*21st sess.*) *Loring Andrews' ed. p.* 295. Whilst this territory thus formed part of *Oneida*, an act was passed on the 3d April, 1798, requiring all deeds of land situ-ate in certain counties, (amongst which *Oneida* but not *Clin-ton* was enumerated,) executed after the 1st February, 1798, to be recorded upon pain of being adjudged fraudulent and void against subsequent *bona fide* purchasers and mortga-gees, *see Statutes as above, p.* 453. On the revision of the laws in 1801, the act last mentioned was incorporated as a section to a general act concerning the proof of deeds and conveyances, passed 6th April, 1801, which, however, by a subsequent act of the same year, it was declared should not go into effect until the *first* day of *October*, 1801. *See Stat-utes, vol.* 1, *p.* 479, § 4, *and p.* 619 *of the same vol. Webster's ed.* Three days previous to the act of 6th April, 1801, by 'an act to divide this state into counties,' the portion of the territory of the state now known as the county of *St. Law-rence* was embraced in the county of *Clinton. See Statutes, vol.* 2, *p.* 5, *Webster's ed.* On the 3d day of March, 1802, the *county of St. Lawrence* was erected, *Statutes, vol.* 3, *p.* 5, *same ed.* ; and on the 10th April, 1805, the fourth section of the act of 1801 was extended to the county of *St. Law-rence*, and it was enacted that all conveyances of land situ-ate in that county, executed *since* 1st October, 1802, should be recorded on or before the 1st January, 1806. *See Statutes, vol.* 4, *p.* 301, § 3, *same ed.* Thus it will be seen that at the time of the execution of the *first* deed to Mrs. Briggs, the premises in question were situate in the county of *Clin-ton*, which was not a *recording county*, and that the second deed was executed *previous* to the time limited by the act

of 1805, as the period designating deeds which should be recorded before 1st January, 1806. Then came the act of 1813, (1 *R. L.* 370, § 4,) requiring all deeds of lands situate in *certain counties*, amongst which is enumerated *St. Lawrence*, executed after 1st February, 1799, *to be recorded* upon pain of being adjudged fraudulent and void against subsequent *bona fide* purchasers and *mortgagees.*

The vice chancellor of the fourth circuit held that under the registry acts of 1805 and 1813, the deed of 1802 to Mrs. Briggs, not having been recorded, was void as against the mortgagee, relying upon the opinion of THOMPSON, J. in *Barker* v. *Jackson, Paine's U. S. C. C. Rep.* 559, 571, and accordingly decreed a foreclosure. The defendants *appealed* to the chancellor, who *reversed* the decree of the vice chancellor. *See the opinion of the chancellor,* 6 *Paige,* 327 *et seq.* Whereupon the complainants brought an appeal to this court. The case was argued here by

*C. A. Mann,* for the appellants.

*D. Cady,* for the respondents.

After advisement the following opinion was delivered :

By Senator VERPLANCK. My opinion is that the chancellor's decree should be affirmed: because I think that such a construction must be given to the several statutes of 1813 and prior years concerning the registry of deeds as will shut out all retrospective operation and effect upon the validity of deeds, made before their enactment, and not at that time required to be recorded. It is conceded that the chancellor has fallen into a slight error, (not affecting the merits of the case or varying the decree,) in relation to the deed of July, 1801, which he supposed to be subject to the recording act of 1798. It now appears that in consequence of the alteration of counties, the lands in question were then within the bounds of another county to which that act did not apply. The two deeds to Mrs. Briggs, therefore, stand on the same footing, and if proved to have

been duly made as alleged, (which I agree with the chancellor is made out by the evidence,) the title under them is valid, unless they are vitiated by the statutes requiring in general terms all deeds executed since February, 1799, and October, 1802, to be recorded, and enacting that all deeds not so recorded should be considered fraudulent and void against subsequent *bona fide* purchasers and mortgagees. I have nothing to add to the chancellor's reasoning as to the probable intention of the legislature that the act of 1813 was not to be retrospective as to all prior deeds, but was intended to apply only to conveyances of lands in counties which had already been subject to similar laws under previous acts for recording; and that, therefore, lands in this particular district, which had by accidental changes from one county to another, escaped the operation of such laws, must not be deemed to be included in the general retrospective words. I assent fully to this construction; but at the same time I must place my conclusion as to the effect of these recording statutes distinctly and expressly upon the clause of the constitution of the United States prohibiting any state from passing any law impairing the obligation of contracts. I cannot but give an effect to this constitutional restriction, in relation to this question, much beyond what the chancellor's opinion appears to admit. I have, in a former opinion, delivered in this court, objected to what I considered an undue extension of this salutary restriction. Here I regard it as applying in full force. Deeds valid and perfect at the time of their execution, and not then requiring for their full legal effect, any further legal sanction, such as recording, are complete and valid executed contracts. Now the effect of a subsequent statute enacting that such valid contracts shall be adjudged fraudulent and void as against certain persons unless a further legal sanction be added, must be in direct hostility to the very words of the constitutional inhibition. The contracts themselves are impaired by being adjudged void. If a law enacts that any class of contracts now fair and valid against the whole world shall hereafter be adjudged fraudulent and void against some particular persons, can this be any other than a law impairing the ob-

ligation of those contracts ?	It is true that the contract may still be said to exist as between the original parties : but the obligation of the contract is surely impaired if its effect and validity are destroyed as against another party—if the executed contract has no longer any validity as between one of the original parties and an assignee of the other, in relation to the same subject matter.	The obligation of the contract between A. and B., was before binding upon B. and all who might claim the effect of the contract by his grant or under his title.	A law is passed pronouncing that in certain cases the contract shall be binding only upon B., and that its former obligation shall no longer bind B.'s grantees.	Does not such a law impair that contract ? Now it cannot be presumed that the legislature intended to enact such an unconstitutional requirement.	If their intention to do so, was manifest and their language not susceptible of any other meaning, then the enactment was unconstitutional and void.	But here, evidence, as shewn by the chancellor, not indeed from the statute itself, but from other parts of the statute book, indicates the probable intention, as well as the manner, in which the framers of the law were led by a natural oversight, to use words that in their literal interpretation would apply retrospectively to some few cases, like the present, not within their contemplation. We may accordingly safely here apply the rule that "a thing which is within the letter of the statute, is not within the statute unless it is within the intention of the maker." *Bac. Abr. tit. Statute* I. When, therefore, the act of 1813, required all deeds executed after February 1, 1799, to be recorded, under the penalty of being adjudged to be fraudulent and void against subsequent purchasers, we must consider it as referring to deeds, which had when executed been subject to a similar rule, and which should have been recorded under previous laws, but not as embracing retroactively deeds then valid without being recorded, which might unintentionally fall within the letter of the enactment.	I apply the same principle and the same rule of interpretation to the prior act of 1805.	I allow the weight of the chronological reasons assigned by the chancellor to show that

this act did not cover the deed of 1802, and which was probably executed in *August* or *September*, whilst the act did not go into effect until *October*.   But independently of that view, that act cannot vitiate either of these deeds, if it comprehends them in its provisions as the chancellor thinks it would, unless proved to have been lost or destroyed.   It is remarkable that this act, after requiring all deeds executed since October 1, 1802, to be recorded before the 1st of January 1806, does not go on to add in terms the usual penalty of being adjudged fraudulent and void against subsequent purchasers.   It is only by inference from the former act of 1801, the provisions of which are here extended to another county, that this penalty can be made out.   A mere inference of this kind, operating in direct hostility to a constitutional restriction, cannot be presumed or allowed, when, even if it had been an enactment in express words, such enactment would have been void. The provision for recording such prior deed then stands alone, merely directory as to the manner, the time, and the place of recording the deeds of those, who without absolute legal necessity might think fit thus to protect the evidence and muniments of their title.

I assent to the chancellor's view of the evidence of the existence of the deeds, and of their loss or destruction, as well as to his conclusions from that evidence.

I am, therefore, of opinion that the deed of 1801 to Mrs. Briggs, and the deed of 1802 for the same lands, with the addition of two hundred acres more, excepted out of the first, are not to be adjudged fraudulent and void as against the complainants, under any of the recording acts ; but conveyed a valid title not defeated by the subsequent conveyance.

On the question being put, *Shall this decree be reversed?* All the members of the court answered in the *negative*. Whereupon the decree of the chancellor was *affirmed*.