Rapallo, J.
 

 It is found by the court below that the defendant has succeeded to the rights of the Buffalo and Attica Railroad Company in the land in dispute. If by the order of the vice-chancellor, made in February, 1844, the
 
 *161
 
 Buffalo and Attica Railroad Company acquired the right to the possession and use of the land during the continuance of its charter, for the purposes of its incorporation, the plaintiff could not maintain ejectment, and the defendant was entitled to judgment. The plaintiff claims that by the order of the vice-chancellor, the company obtained no rights which could be set up as against him, for the reason that his title was derived under a subsequent sheriff’s sale on execution upon a judgment, which was a lien upon the land at the time of the institution of the proceedings by the railroad company before the vice-chancellor, and that the judgment creditor in whose favor such lien then existed was not made a party to the proceedings.
 

 The court below held that the act under which the proceedings for condemnation of the land were instituted, did not require that judgment creditors be made parties thereto. (Laws of 1834, p. 228; 1836, p. 323; 1843, p. 226.) That under those acts the proceedings were to be taken only against the
 
 owners
 
 of the land, and that compensation was to be made only to such
 
 owners.
 
 That a judgment creditor having a mere statutory lien was in no sense an owner, and that the title of the railroad company, when acquired under the acts, became paramount to such lien.
 

 The provisions of the acts in question are fully referred to in the opinion delivered at General Term by Hasten, J., and we concur with the learned judge that they admit of no other construction than that the
 
 owners
 
 were the only necessary or proper parties to the proceeding.
 

 The general railroad laws of 1848 and 1850 provide for making parties all persons interested, as
 
 owner, tenant, lessee
 
 or
 
 encumbrancer.
 
 But no such provision was contained in the act of 1836, chap. 242, under which the Buffalo and Attica Railroad Company derived its powers, or in the act of 1834, chap. 177, referred to in the act of 1843, chap. 169. In those acts the only parties for whom notice or compensation are provided are the
 
 owners.
 

 The terms “ owner or owners,” as used in these statutes,
 
 *162
 
 being intended to designate the parties • entitled to the compensation which is substituted for the land taken, should be held to embrace all persons having estates in the land, in possession, reversion or remainder.
 
 (Parks
 
 v.
 
 The City of Boston,
 
 15 Pick., 198.) All persons having proprietary interests are entitled to compensation, for the aggregate of those interests constitute the ownership or fee. It has been frequently held that tenants for years are owner’s within the meaning of similar statutes.
 
 (Turnpike Road
 
 v.
 
 Brosi, 22
 
 Penn. State R.,
 
 29; Brown
 
 v.
 
 Powell,
 
 25 id., 229;
 
 B. and O. R. R.
 
 v.
 
 Thompson,
 
 10 Md.,
 
 16; Parks
 
 v.
 
 City of Boston, 15
 
 Pick., 198.) Also that a franchise issuing out of the land may be regarded as real estate, for which the owner is entitled to compensation.
 
 (Enfield Bridge Co.
 
 v.
 
 Hartford and N. H. R. R. Co., 17
 
 Conn., 454.)
 

 But a judgment creditor of an owner has no estate or proprietary interest in the land. He stands wholly upon the law, which gives him a remedy for the collection of his debt by a sale of the land under execution, in case sufficient personal property of the debtor should not be found. This remedy is not secured by contract, but is purely statutory, and in aid of it acts have been passed, from time to time, authorizing a sale of the land which the debtor owned at the time of the recovery or docketing of the judgment, or at any subsequent period, and making the judgment a lien upon the land. The duration
 
 of
 
 this lien and the mode of its enforcement and discharge are subjects which appertain to the laws for the collection of debts; and the rules upon those subjects have been changed, from time to time, according to the will of the legislature. The power of the legislature to regulate those matters can not be doubted. Acts have been passed shortening and lengthening the duration of the liens of existing judgments, and even providing for their extinguishment without any proceeding to which the judgment creditor was a party. By the act of April 2d, 1813 (1 R. L., 500), it was provided that no judgment theretofore rendered should be a lien for more
 
 *163
 
 than ten years from April 9, 1811. By the act of April 3, 1821, the lien of judgments recovered between April 9,1811, and April 2, 1813, was extended to ten years from the time of docketing; and the lien of judgments on which executions had been issued was further extended three months. By the act of May 14, 1840, the duration of the lien of all then existing judgments was reduced to five years from the time that act took effect. (Laws of 1840, chap. 386, § 32.) By the act in relation to the foreclosure of mortgages (Laws of 1840, chap. 342, § 9), it was provided that judgment creditors need not be made parties to foreclosure suits, and that the lion of their judgments should be cut off by the foreclosure though they were not parties. This act applied to existing as well as future judgments. By section 282 of the Code, the real estate of the debtor may be exempted from the lien of the judgment by being marked secured on appeal, and this provision, when originally adopted, applied to then existing judgments.
 

 It is clearly within the power of the legislature to abolish the lien of all judgments at any time before rights have become vested or estates acquired under them, and, placing real estate on the same footing as personal property, to confine the remedies of the creditor to the property held by the debtor at the time of issuing the execution.
 

 This would be no greater exercise of power than the abolition of the right of distress for rent, or of the lion of the landlord on property taken in execution, or of the right of imprisoning the debtor. Yet the validity of such laws has been fully recognized even where they affected existing claims or judgments. They do not take away property, or affect the obligation of contracts, but simply affect legal remedies. There can, therefore, be no doubt of the validity of a provision causing the lien of a judgment, not ripened into a title by a sale, to be superseded by the taking of the land under proceedings in exorcise of the right of eminent domain, on payment of compensation to the owner of land.
 

 
 *164
 
 We think that the act of 1836 had that effect. It is claimed on the part of the appellant, that if the judgment creditor is not an owner, the act makes no provision for divesting his interest; and therefore the effect of the order of condemnation is to vest in the company the right to the land, subject to the lien of the judgment, in the same manner as if the company had taken by deed from the owners. But such a construction cannot be admitted.
 

 The object of the act was to delegate to the company the right of eminent domain, to the extent necessary to enable it effectually to secure its roadway, etc., in case it should fail to obtain it by contract with the owners. It provides for the appraisement, on notice to the owner or owners, of the value of the land taken, and of any further damages which the owners may sustain by the construction of the road, injury • to buildings, etc. The whole amount of this appraisement is directed to be paid to the owners. There is no provision for assessing the value of the interest of the owners, subject to the lien of judgments, or for retaining any part of the value of the land as indemnity against such judgments. The whole value must be paid to the owners, pr deposited in bank, and the owners are left to pay their own debts. '
 

 The act then states what right the company shall obtain by virtue of such payment to the owners, and the order made thereupon. On the completion of the proceedings, the company is declared to be possessed of the land during its corporate existence, with the right to use the same for the purposes of the road.
 

 This declaration excludes the implication, that, after the owners have been compensated, the right of any other person to interfere with the possession or use of the land is reserved, or that, in order to retain such use, the company is bound to satisfy liens of judgment creditors, after having been compelled to pay the whole value of the land to the owner.
 

 What recourse the judgment creditor might obtain in equity upon the proceeds paid to, or deposited to the credit of the owner, is a question not involved in this controversy;
 
 *165
 
 neither is it necessary to consider how the rights of mortgagees would be affected by the proceeding, or what protection they could obtain.
 

 The matter of the lien of judgments being wholly under the control of the Legislature, they had power to confer upon the company the right of possession and use of the land free from all such liens, on paying the value of the land to the owner; and we think it was manifestly their intention so to do, modifying to that extent the laws giving liens to judgment creditors.
 

 In the present case, this modification had been made before the judgment relied upon was recovered; but it is not necessary to rest our conclusion upon that ground.
 

 The act of 1847 (ch. 272, § 3) is referred to by the counsel for the appellant, as implying that an outstanding judgment affecting the interest of an owner who had been compensated, was recognized by the Legislature as a defect in the title. But no such inference can properly be drawn from the act of 1847. Its provisions afforded a remedy to the railroad company in cases where land, obtained by conveyance from an owner, was subject to liens under which title had subsequently been perfected, and the title of the company was thus rendered invalid, and also in cases where, in proceedings for condemnation, some owner had been omitted.
 

 The objection taken in the points, that the case does not show that the final order was recorded, was not taken at the trial. If taken, it might have been in the power of the defendant to furnish the proof. The case does not show that the order was not recorded, and we have frequently held that we will not reverse a judgment on the ground of a mere omission of a finding or of proof of a fact, susceptible of proof, unless the point was taken at the trial.
 

 The only other objection raised to the validity of the proceedings is, that the orders subsequent to the appointment of the appraisers should have been made by the county judge, and not by the vice-chancellor.
 

 The act of 1836 directed that the application should be
 
 *166
 
 made to the county judge for the appointment of a jury of appraisers, and that on the filing of their inquisition, and proof of the payment of the amount, he should make a final order reciting the proceedings, which order should be recorded. It gave no power to the county judge to modify the appraisement. The act of 1843 provides that the act of 1836 be so altered that instead of a jury, three appraisers shall be appointed by the vice-chancellor, according to the provisions of the act of 1834, chapter
 
 177,
 
 section 16, and that the damages may be increased or diminished by the vice-chancellor, as provided in that act. The act of 1843 is silent as to who shall make the final order. But it contains no provision indicating that a part of the proceedings shall be conducted before one officer and part before the other. It is very imperfect in its frame and language, and leaves much for construction. But it clearly required the first application to be made to the vice-chancellor, and required the submission to him of the proceedings of the appraisers, that he might confirm or modify their award as to damages; and we think it did not contemplate a subsequent proceeding before the county judge, or that an order should be made by him reciting proceedings not had before him, but before the vice-chancellor. Reading the three acts together, we think it was the intention of the act of 1843 to substitute the vice-chancellor for the county judge throughout the proceeding.
 

 Having come to the conclusion that, conceding the Hatch judgment to have been a lien at the time of the condemnation, it was cut off or superseded by the proceedings, and that no irregularity or invalidity in the proceedings is shown, a discussion of the question of adverse possession is not necessary, and the judgment must be affirmed, with costs.
 

 Church, Ch. J., Allen and G-rover, JJ., concur; Folger, J., dissents ; Peokham, J., of kin to plaintiff, not voting.
 

 Judgment affirmed.