PETER FITZPATRICK, Appellant, *v.* FELIX BOYLAN, impleaded, etc., Respondent.

The mechanic's lien law for the city of New York of 1863 (chap. 500, Laws of 1863) has no retroactive operation; it repealed the old act as to all liens subsequently created, but continued it in force as to existing liens. (DWIGHT and GRAY, CC., dissenting.)

Accordingly *held* (DWIGHT and GRAY, CC., dissenting), where a notice of lien was filed under and as required by the act of 1851 (chap. 513, Laws,

of 1851), and proceedings were commenced to enforce the lien prior to the act of 1863 taking effect, that the provision of the latter act (§ 11) that "liens shall, in all cases, cease after one year, unless by order of the court the lien is continued," etc., did not apply; but that the lien continued after the expiration of the year and until the rendition of judgment.

(Argued January 15, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment entered upon an order upon trial at Special Term, dismissing the complaint as to defendant Boylan.

This was a proceeding to enforce a mechanic's lien against premises known as No. 474 Third avenue, in the city of New York.

The original complaint, served under an order of the court made May 4th, 1863, alleged that the plaintiff had entered into an agreement with the defendant O'Brien, to supply a quantity of brick and other building materials, and to perform work and labor to the value of $868.45, which sum O'Brien promised to pay. There was a further allegation, that the goods were supplied and the work furnished, in pursuance of the agreement, between the 7th day of November, 1862, and the 3d of February, 1863, and were used in the erection of buildings on the premises referred to. It was also set forth, that the defendant O'Brien had wholly failed to pay more than $200, so that there was still due $668.45, with interest from February 3, 1863. The complaint then stated that the other defendant, Boylan, was, prior to October 28th, 1862, and at the time of the complaint, owner in fee simple of the premises in question, and that O'Brien was the contractor with Boylan for the erection of the building aforesaid. It was added, that on February 7th, 1863, the plaintiff filed a lien against the defendants, O'Brien and Boylan, upon the premises already named, and that there was then due from Boylan to O'Brien, under the contract, more than sufficient money to discharge the lien,

and that the object of the action was to foreclose the lien for the unpaid balance of claim. There was then a demand for judgment for the claim, interest and costs, with a sale of the interest of Boylan in the land, and a judgment for deficiency, if any. This complaint was verified May 5th, 1863. An answer was verified June 16, 1863, which denied the allegations in the complaint, except that there was an admission that Boylan was the owner of the premises 474 Third avenue, and that the defendant O'Brien was the contractor for the erection of a building upon said premises at the time of the filing of the lien. No further proceedings appear to have been taken in the action until March 11th, 1870. At that time, an amended complaint was served, containing the following allegation, additional to what was set up in the original complaint: That the work and services were furnished *under and by virtue* of a contract therefor entered into between the defendant Boylan, as owner, and the defendant O'Brien, as contractor. The answer of March 31, 1871, denied all the material allegations of the amended complaint, except that it admitted that Boylan was owner of 474 Third avenue.

The case was brought on for a hearing at a Special Term of the court held November 3, 1870, when the judge found, as facts, that the proceeding was commenced to foreclose a mechanic's lien on the property, the notice of which was filed in the office of the clerk of the county of New York, on February 7th, 1863, and that no order of court continuing this lien had been made, and that there was no new docket in the office of the clerk of the county, stating the fact that such order had been made.

He further found, as a conclusion of law, that the complaint should be dismissed, as to the defendant Boylan.

To these conclusions, both of law and of fact, the plaintiff excepted.

*Amasa J. Parker* for the appellant. This action is in no wise affected by the act of 1863. (*Calkins* v. *Calkins,* 3

Barb., 306; *Johnson* v. *Burrell*, 2 Hill, 238; *Berley* v.
*Rampacher*, 5 Duer, 188; *Trist* v. *Cabenas*, 19 Abb., 143;
*Fairbanks* v. *Wood*, 17 Wend., 329.) A mechanic's lien filed
under the statute can only be discharged in one of the modes
prescribed by the statute. (*Fettrich* v. *Totten*, 2 Abb. Pr.
[N. S.], 264; *Poerschke* v. *Kedenburg*, 6 id., 172; *Paine* v.
*Bonney*, 4 E. D. S., 734.)

*Charles E. Miller* for the respondent. In the foreclosure
of a mechanic's lien the requirements of the statute must be
strictly performed. (*Sharp* v. *Johnson*, 4 Hill, 92; *Mushlitt*
v. *Silverman*, 50 N. Y., 360.).

EARL, C. I think it appears, clearly, that the plaintiff
was defeated at the trial term, upon the sole ground that no
order of court continuing his lien had been made, and no
new docket made in the office of the county clerk stating the
fact that such order was made. Hence, the only question for
our consideration is, whether he was properly defeated upon
that ground.

The plaintiff filed notice of his lien on the 7th day of
February, 1863, as required by section 6 of chapter 573 of
the Laws of 1851, and commenced proceedings to enforce his
lien on the sixth of May thereafter; and hence, by section 12
of that chapter, the lien was continued until judgment was
rendered, which superseded the lien and took its place.
On the 5th day of May, 1863, was passed chapter 500,
"An act to secure the payment of mechanics, laborers and
persons furnishing materials toward the erection, altering or
repairing of buildings in the city of New York." Section 11
of that act provides, that, "liens shall, in all cases, cease after
one year, unless, by order of court, the lien is continued, and
a new docket made stating such fact." It was under this sec-
tion that the plaintiff was defeated; and whether he was
properly defeated or not, depends upon whether or not that
act shall be construed as having retroactive as well as pros-
pective operation. I think that act must have prospective

operation only.   Section 1 expressly provides that the liens to be created under that act are for work and materials thereafter to be done and furnished; and the entire proceeding prescribed by the act is to enforce the liens created under the act. The last section provides that the act shall take effect on the 1st day of July, 1863; and section 2 provides that all former acts giving liens, in the city of New York, are repealed, " except so far as may be necessary to carry into effect liens acquired before this act takes effect."   The clear purpose of the act was to provide a new system as to these liens, and to repeal the old one as to all liens to be thereafter created, but to continue it in force as to all existing liens.   This construction is sanctioned and required by the rule of law that every statute shall be construed as having prospective operation only, unless its express letter or clearly manifested intention requires that it should have retroactive effect; and that, if all the language of the statute can be satisfied by giving it prospective operation it shall have such operation only. (*Calkins* v. *Calkins*, 3 Barb., 306; *Johnson* v. *Burrell*, 2 Hill, 238; *Fairbanks* v. *Wood*, 17 Wend., 329; *Berley* v. *Rampacher*, 5 Duer, 188; *Trist* v. *Cobens*, 19 Abb., 143; *Dash* v. *Van Kleeck*, 7 John., 499; *Jackson* v. *Van Zandt*, 12 id., 168; *Sayre* v. *Wisner*, 8 Wend., 662; *Palmer* v. *Conly*, 4 Denio, 376; *Hackley* v. *Sprague*, 10 Wend., 114.)

The learned judge, therefore, erred, at the trial term, in defeating plaintiff, upon the ground specified by him, and the judgment must be reversed and new trial granted, costs to abide event.

DWIGHT, C. (dissenting).   In disposing of this case it is necessary to consider the construction and effect of section 11 of chapter 500 of the Laws of 1863, concerning mechanic's liens in the city of New York.

The present action is based upon a lien filed February 7th, 1863.   The statute was passed May fifth and went into effect July 1st, 1863.   The question is whether the lien is affected by the statute.   The words of this section are as follows:

" Liens shall, *in all cases*, cease after one year, unless by order of the court the lien is continued and a new docket made stating such fact (without a discharge of the lien)." It is claimed by the plaintiff that this section does not apply to the present case. He bases his claim on the general proposition that the statute should not be construed to act retrospectively so as to embrace existing liens.

It is a well settled rule that, in certain cases, a statute shall not be construed to have a retrospective operation, unless the language of the act imperatively requires that construction. The rule is regularly applied where a retrospective operation would interfere with a vested right. (*Dash* v. *Van Kleeck*, 7 J. R., 477; *Wood* v. *Oakley*, 11 Paige, 400; *Johnson* v. *Burrell*, 2 Hill, 238; *Sanford* v. *Bennett*, 24 N. Y., 20.) This sound and wholesome doctrine is not so rigorous in its application to remedies, and retrospective laws operating upon them are, to a certain extent, allowable. (*Dickerson* v. *Cook*, 16 Barb., 509; *Matter of Smith*, 10 Wend., 449; *Van Rensselaer* v. *Snyder*, 13 N. Y., 299.) Still, even in the case of statutes affecting remedies, proceedings already pending are to be regarded as exempted from their operation, unless a contrary intent appears. (*Trist* v. *De Cabezas*, 18 Abb. Pr., 143; 25 How. Pr., 417.) These propositions, however, only state rules of construction for the purpose of ascertaining the true legislative intent. Where that intent is clear they must give way. It is the duty of the courts to carry into effect the legislative will, so long as it does not conflict with the Constitution of the State or United States. Where the whole scope of the statute now under consideration is regarded, the intent of the legislature is plain.

The act previously in force was chapter 513 of the Laws of 1851. The twelfth section of that act concerns the same subject as the eleventh section of the act of 1863. It is, however, quite different in its terms. The act of 1851 provided that every lien created under its first section should continue until the expiration of one year from its creation,

and until judgment rendered in any proceedings for the enforcement thereof. This language plainly prolongs the lien during the entire period of the foreclosure proceedings. The policy of the act of 1863 is quite different. Liens are to cease *in all cases* after one year, unless by order of court the lien is continued and a new docket is made stating the fact. Affirmative action of the court is called for before the close of a year, when, it is to be supposed, that no continuance will be granted, unless good ground is given for the delay in enforcement. This brings the enforcement of the proceedings under proper judicial supervision. Other important changes in the law are made by the act of 1863. The twelfth section then provides, that all former acts giving liens to mechanics and others erecting buildings in the city of New York are repealed, except so far as may be necessary to carry into effect liens acquired before this act takes effect. It further provides, that persons who have performed work under a contract, or furnished materials under a contract, prior to July 1, 1863, when the act took effect, may proceed to acquire a lien under the new act. The statute thus supplies a complete and consistent scheme, classifying all possible cases that may arise into three classes: (1.) Those where the lien is acquired before July 1, 1863. (2.) Where the work and materials were supplied before that date, and yet no lien was acquired. (3.) Where the work and materials were furnished after the date referred to. In the first class, to which the present case belongs, the law of 1851 is repealed, except so far as it is necessary to make use of its provisions to "carry the lien into effect." The second and third classes are wholly governed by the law of 1863.

A suggestion was made on the argument that the eleventh section of the act of 1863 does not require an order of continuance when the action to foreclose has been commenced; I think it does. The substitution of the eleventh section of the act of 1863 for the twelfth section of the law of 1851, shows plainly the intent of the legislature. Under the earlier law, the claim of the plaintiff would have been justified

according to the natural import of the words used. The later law materially changes the language and adopts a new policy. (*Mathews* v. *Daley*, 7 Abb. Pr. [N. S.], 379; S. C., 38 How. Pr., 382; *Freeman* v. *Cram*, 3 N. Y., 305, under similar clause in act of 1864.) The present case showing a delay of so many years without apparent cause would lead to the conclusion that the change in policy in 1863 was a wise one.

The plaintiff's case must fail, unless it can be shown that the saving clause in the eleventh section preserves his lien, or unless the application of that section to his case is unconstitutional. The consideration of these two points is only necessary to dispose of this case. The saving clause, it will be observed, does not wholly exempt former proceedings from the operation of the new act. It withdraws them from it only in a qualified manner, and for a special purpose. That is, "so far as may be necessary to carry into effect liens acquired before this act takes effect." These words refer to the mode of procedure, the machinery by which the lien is made productive. They presuppose the continued existence of the lien itself. But the eleventh section strikes at the root of the lien and subverts it, unless an order of continuance is obtained and a docket made. That section is not fairly included within the words "carry into effect." If the act had operated upon the lien so suddenly as to give no opportunity to apply to the court for an order of continuance, there might be reason for contending that the section should not be applicable, as, if it were, the lien could not be carried into effect. But that was not the case. The act was passed May fifth, and did not take effect till July first. After it did become law, the time to apply for the continuance, in the present case, did not expire until seven months had elapsed, from July 1, 1863, to February 7, 1864. This interval afforded abundant opportunity to comply with the provisions of the eleventh section. There is no pretence that any such application was made. The result is,

that the lien ceased to be in force on February 7th, 1864, unless the statute is unconstitutional.

In this inquiry, the first point to be considered is, whether such a lien as this confers a vested right on the plaintiff, or only gives him a remedy. The consideration of it will be confined to the specific case here involved, a lien by a mechanic on the property of one with whom he has made no contract, but given to him on the ground that the owner of the property has made a contract with one for whom the plaintiff has done work and furnished materials *in conformity with* the terms of such contract. Such a right as this had no existence at common law. There would be no *privity of contract* between the mechanic and the property owner on which a common-law action could be based. The *right* is derived from the statute and falls with its repeal. It has been decided with entire uniformity by the Court of Common Pleas of the city of New York, under the act of 1851, that the loss of the lien deprives the mechanic of all claim against the owner in such a case as is now under discussion. The proceeding has been held to be *in rem*, and that if the lien failed the rights of the lienor are at an end, so that a personal judgment could not be rendered, except where the proceeding was directly between the original contractor and the owner. (*Quimby* v. *Sloan*, 2 E. D. Smith, 594; *Sinclair* v. *Fitch*, 3 id., 677; *Cox* v. *Broderick*, 4 id., 721; *Dennistown* v. *McAllister*, id., 729.) Assuming that these cases furnish a correct exposition of the law, as that view is most favorable to the plaintiff, the eleventh section of the act of 1863 did not merely act on the remedy but extinguished his right. It may even be properly claimed that the lien was a part of the contract, as the mechanic may be fairly supposed to have contracted to furnish the materials, etc., with a view to this remedy against the owner. (*Blauvelt* v. *Woodworth*, 31 N. Y., 285, 287.) So it was held in *Gunn* v. *Barry* (15 Wall. [U. S.], 610) that a State law withdrawing property from the lien of a judgment, under existing State statutes, is unconstitutional as impairing the obligation of contracts. It is also suggested, in the opinion

of the court, that it would violate a vested right of property, though this does not seem so plain where another remedy against the judgment debtor remains. (*Watson* v. *Central R. R. Co.*, 47 N. Y., 157.) Remedies are, however, in certain cases, a part of the obligation of the contract as where, without those that are taken away, no efficient remedy remains. (*Watson* v. *Central R. R. Co.*, 47 N. Y., 157 ; *Walker* v. *Whitehead*, 16 Wall., 314–317.) It seems to be clear, under these authorities, that if the legislature had arbitrarily taken away from the plaintiff the lien ·that he had once acquired against the defendant Boylan, that the statute would be unconstitutional.

It may be upheld, however, on the ground that there was no such intent on the part of the legislature, and that the act was passed for public reasons, analogous to those which regulate the renewed filing of chattel mortgages or the registration of conveyances of land. Under the mechanics' lien law of 1851, or that of 1855, there was no mode of discharging a lien, except that provided in the eleventh section of the act of 1851. (*Hallahan* v. *Herbert*, 11 Abb. Pr. [N. S.], 326.) That section did not reach the case of the cessation of the lien by mere lapse of time, unless there was an order to continue it. The act of 1863 provides a means by which due diligence in the enforcement of a lien may be exacted. In the words of RUGGLES, Ch. J., in *Freeman* v. *Cram* (*supra*), in commenting on the act of 1844, where a similar provision is found : " The mechanics' lien may be enforced, by sale, within one year after its commencement. From the nature of the mechanics' demands, it was not necessary to provide anything more than a temporary lien. Their claims being uncertain in amount, the creation of a permanent incumbrance would have been vexatious and embarassing to creditors and purchasers." (P. 309.) The act of 1863 was more complete than that of 1844, since the latter allowed no relief if the year had elapsed, while the former supplies an effectual protection to honest and diligent claimants, by permitting a continuance of the lien, through judicial

authority. There is, thus, a clear element of public policy in this legislation which brings it within the analogy of such cases as *Varick* v. *Briggs* (6 Paige, 323); *Jackson* v. *Lamphire* (3 Peters, 280); *Clarke* v. *White* (12 id., 178). In the first of these cases it was held that a statute requiring all deeds of real estate executed previous to the passing of the statute, to be recorded within a limited period, and declaring them, if not so recorded, to be invalid as to subsequent *bona fide* purchasers, is binding upon the grantees of such deeds as were in existence and in a situation to be recorded subsequent to the passing of the act and within the time prescribed. *Jackson* v. *Lamphire* (3 Peters, 280), is to the same effect. The court there said, "though the effect of a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts. Such, too, is the power to pass acts of limitations and their effect. *Reasons of sound policy* have led to the general adoption of laws of both descriptions, and their validity cannot be questioned." (P. 290.) Any different view which was taken of this general subject on the review of *Varick* v. *Briggs* (22 Wend., 543) must be regarded as overborne by the cases cited from the Supreme Court of the United States. *Jackson* v. *Lamphire* has, recently, been approved. (*Curtis* v. *Whitney*, 13 Wallace [U. S.], 68.) It was there decided that a statute does not necessarily impair the obligation of a contract because it may affect it retrospectively or because it enhances the difficulty of performance to one party or diminishes the value of the performance to the other, provided that it leaves the obligation of performance in full force. So, it was held, that a statute which required the holder of a tax certificate made before its passage, to give notice to an occupant of the land before he takes his deed, does not impair the obligation of the contract evidenced by the certificate.

In the present case, the plaintiff may have been put to some trouble to apply to the court for a continuance of his lien, and was exposed to the entire loss of it unless he took the

course prescribed by law. Still, he had abundant time to do it in (from July, 1863, to February, 1864); and, within the cases already cited, was not deprived of any substantial right, except by his own neglect. It was argued that if this view were taken, the law might operate so instantaneously as actually to be a denial of justice; as if the lien should expire according to its tenor on July 1, 1863. That case will be disposed of when it arises. On this point the language of the court in *Jackson* v. *Lamphire*, repeated in *Curtis* v. *Whitney*, is decisive: "Cases may occur where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the intervention of the court, but the present is not one of them." (P. 290.)

The complaint, in the present case, did not contain facts sufficient to constitute a cause of action, and might have been dismissed on that ground. The original complaint is conceded, by the plaintiff, to have been defective. This defect was not aided by the amendment; that merely alleged that the plaintiff performed work, etc., "*under and by virtue of*" a contract between the defendant O'Brien and his co-defendant, Boylan. The statute requires that the work, etc., should be done "in conformity with" the contract. The two expressions are by no means equivalent. They may be the same in kind but they differ in degree. A person might perform work "under and by virtue of a contract" and do very little. He might not fulfill its terms so as to complete the contract. He could not act *in conformity with it* unless he carried it forward to completion. As his right of action is given by statute, it is plain that it should have been accurately complied with; and there should have been an allegation, in substance, that the contract was executed on the plaintiff's part. The complaint did not correspond with this rule.

The judgment of the court below should be affirmed.

For reversal, LOTT, Ch. C., EARL and REYNOLDS, CC.

For affirmance, DWIGHT and GRAY, CC.

Judgment reversed.