HUGHES FAWCETT, Appellant, v. WILLIAM D. ANDREWS, Respondent.

First Department, December 1, 1922.

Master and servant — action by employer for damages arising from breach of contract to manage employer's business — contract was executed in 1920 — business conducted by plaintiff under assumed family name — certificate filed in 1905 — amendment of 1915 to Penal Law, § 440, limiting use of family name not retrospective — plaintiff not conducting business illegally and contract is enforcible — Legisla-ture could not deprive plaintiff of vested rights in name.

The amendment of section 440 of the Penal Law by chapter 446 of the Laws of 1915, providing that " No person or persons shall hereafter use, or file a certificate for the use of, any family name or names " to carry on business in this State unless the name or one of the names so used is the real name of the person or persons conducting the business or said person is a successor in interest to the person theretofore using such name, is not retrospective in operation.

Accordingly, the plaintiff who filed a certificate in 1905 in the office of the clerk of the county of New York to do business under the firm name of the " Robert Andrews Company " and who conducted his business thereafter under that name, did not violate section 440 of the Penal Law by continuing to use said family name after the above amendment to the statute was enacted. There-fore, in this action, which was instituted to recover damages from the defendant for the breach of an agreement entered into by the parties on January 1, 1920, whereby the defendant agreed to conduct and manage plaintiff's business under said assumed name, it was not necessary for the plaintiff to allege compliance with said amendment of section 440 of the Penal Law.

It seems, that the Legislature would not have the power to deprive the plaintiff of the rights he had acquired to the use of his trade name after he filed a cer-tificate according to law in 1905.

DOWLING and PAGE, JJ., dissent.

APPEAL by the plaintiff, Hughes Fawcett, from an order of the Supreme Court, made at the New York Special Term and entered

in the office of the clerk of the county of New York on the 20th day of February, 1922, granting defendant's motion for judgment dismissing the complaint on the ground that it fails to state facts sufficient to constitute a cause of action.

*Cohen Brothers* [*Guy Hughes Riegel* of counsel; *Lawrence B. Cohen* with him on the brief], for the appellant.

*E. G. Budington* of counsel, for the respondent.

GREENBAUM, J.:

The complaint alleges that the plaintiff, Hughes Fawcett, is, and at all the times therein mentioned had been, carrying on business under the name of the Robert Andrews Company, and that he is, and at all such times was, the sole owner of the business known as the Robert Andrews Company; that in March, 1905, he caused to be " filed in the office of the Clerk of New York County a certificate to do business under the firm name and style of the Robert Andrews Company, under and pursuant to the Penal Law of the State of New York, and ever since said date and up to the present time has been conducting said business under said name; " that on or about January 1, 1920, he entered into an agreement with defendant whereby he employed the latter for a period of five years from that date to operate and conduct, as manager for plaintiff, said business known as the Robert Andrews Company; that on January 1, 1920, defendant entered upon said employment, and continued in it until October 29, 1921; that plaintiff has duly performed all the terms of the agreement, but that defendant, without any just cause quit the service of the plaintiff and has ever since neglected and refused to render his services to plaintiff according to his said agreement, thereby injuring the plaintiff in the sum of $50,000.

The order appealed from recites that it appears " on the face of said complaint that plaintiff is unlawfully carrying on business under the assumed name of the Robert Andrews Company, and that this action is for damages for the alleged failure of defendant to carry out the unexecuted portions of an alleged contract between plaintiff and defendant for the unlawful conduct of said business by plaintiff under the assumed name of the Robert Andrews Company."

The Penal Code in force in 1905 was enacted by the Laws of 1900, chapter 216, which provided as follows:

" § 363-b.  1. No person or persons shall hereafter carry on or conduct or transact business in this State under any assumed name or under any designation, name or style, corporate or otherwise,

other than the real name or names of the individual or individuals conducting or transacting such business, unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons conduct, or transact, or intend to conduct or transact such business, a certificate setting forth the name under which such business is, or is to be, conducted or transacted, and the true or real full name or names of the person or persons conducting or transacting the same, with the postoffice address or addresses of said person or persons. Said certificate shall be executed and duly acknowledged by the person or persons so conducting, or intending to conduct said business." Other subdivisions regulated the details of the filing of said certificate and the section also provided that failure to comply therewith shall be a misdemeanor. In 1909 the provisions of that section became section 440 of the Penal Law and subdivision 1 thereof re-enacted the provisions quoted with the added section heading of " Conducting business under assumed name."

The Laws of 1915, chapter 446, amended section 440 of the Penal Law by adding to subdivision 1 of the previous section the following: " *No person or persons shall hereafter use, or file a certificate for the use of, any family name or names* or colorable simulation thereof to carry on or conduct or transact business in this State unless the name, or one of the names, so used or intended to be used is the true or real name of the person or of one of the persons conducting or intending to conduct said business, or said person or persons are successors in interest to the person or persons theretofore using such name or names to carry on or conduct or transact business, in which case the certificate filed shall so state." (Italics ours.) This provision was re-enacted when the subdivision was amended by chapter 224 of the Laws of 1919.

The defendant concedes that, according to the allegations of the complaint, the plaintiff was lawfully conducting business under the firm name of Robert Andrews Company from 1905 to 1915, but contends that after the amendment of 1915, above quoted, the plaintiff not having alleged compliance therewith, it is to be presumed that his use thereafter of the name of Robert Andrews Company was in violation of law, and hence that the contract made with defendant is unenforcible.

The question, therefore, is, did plaintiff's right to the use of the name Robert Andrews cease because of his failure to file a certificate as required by the Laws of 1915, *supra?* In other words, was the amendment of 1915 retrospective and applicable to plaintiff?

38

It may not be inappropriate at the outset to consider the purpose of the statute under review.

In *Gay* v. *Seibold* (97 N. Y. 472) the plaintiffs, book publishers, doing business under the name of Gay Brothers & Co., entered into a written agreement with the defendant John S. Seibold, under which he was to act as manager of their branch office in the city of Buffalo. The defendant at the same time executed, together with others, a bond to the plaintiffs that he would well and truly pay to Gay Brothers & Co. all sums due from him under the agreement as therein prescribed. The plaintiffs thereafter brought an action to enforce the obligations of the bond, and the defendant William H. Seibold in his answer, among other matters, alleged as a defense that the plaintiffs " were and are carrying on business in violation of law in this, to wit: that said plaintiffs were and are carrying on business in the name of Gay Brothers & Co., with the designation of ' and Company ' or ' & Co.' " and that the said " & Co." represented " no actual partner or partners in violation of the act of the Legislature of the State of New York, entitled ' An Act to prevent persons from transacting business under fictitious names.' "

The statute referred to in that action was chapter 281 of the Laws of 1833, which was as follows:

" § 1. No person shall hereafter transact business in the name of a partner not interested in his firm, and where the designation ' and company,' or ' & Co.' is used, it shall represent an actual partner or partners.

" § 2. Any person offending against the provisions of this act, shall, upon conviction thereof, be deemed guilty of a misdemeanor, and be punished by a fine not exceeding one thousand dollars."

The court said in its opinion, EARL, J., writing: " The purpose of the statute was obviously to protect persons giving credit to the fictitious firm on the faith of the fictitious designation. It could have had no other purpose. It was not needed to protect those who obtained credit from such a firm. Although one may be doing business generally in violation of this statute, a violation thereof may not be predicated of any transaction in which the false designation is not used, and an indictment under the statute cannot be based upon such a transaction. * * * No credit was given to and no reliance placed upon the false designation, and in fact no credit whatever was given to the plaintiffs. The object of this bond was to secure the plaintiffs for a credit given by them to John S. Seibold. Besides, here all the parties to this transaction knew who the real partners were. No one was deceived, and there was no possibility that any of the parties to the bond

could be imposed on or harmed by the false designation. To indict and punish the plaintiffs for a crime in such a case would be most absurd and would shock the common sense, and the sense of justice of every right-thinking person. This case is not, therefore, within the purpose or intention of the statute, and such a transaction is not one of the mischiefs sought to be remedied by the statute. Therefore, although this transaction should be held to be within the letter of the statute, it is clearly not within the purpose and intention of the statute, and hence it is outside of the statute. It is a rule peculiarly applicable to the construction of penal statutes, that a thing within the letter of a statute is not within the statute, unless within the intention thereof; and so too in the construction of remedial statutes, it is generally held that a thing within the intention is within the statute though not within the letter; and these rules have many illustrations in the books." (Citing cases.)

The rules thus laid down to a certain extent are applicable in the case before us. The instant action is one against the defendant to enforce a contract between the parties. It does not appear that defendant was injured by plaintiff's use of the name of Robert Andrews. The complaint under review negatives the idea that the plaintiff could possibly have perpetrated any fraud upon the defendant by the use of its trade name in making the agreement with him upon which this action is based, and hence in the language of the opinion in the *Gay Case (supra)*, it " would shock the common sense " to think that the plaintiff could be punished for using his trade name in the agreement which he made with the defendant.

I do not think that the amendment of 1915 was retrospective or intended to apply to one who had theretofore complied with the provisions of the law of 1900. It is to be observed that the amendment starts out as follows: " No person or persons shall *hereafter* [italics mine] use, or file a certificate for the use of," etc. The language of the statute in one aspect gives inherent indication that it was not the legislative intention that it was to apply to one who had theretofore lawfully acquired a right to use the name of another in his business, but in any event the intention of the Legislature in that regard is not clear.

In *Jacobus* v. *Colgate* (217 N. Y. 235, 240) it is stated: " The general rule is that statutes are to be construed as prospective only (27 Halsbury's Laws of England, p. 159). It takes a clear expression of the legislative purpose to justify a retroactive application [*Isola* v. *Weber*, 147 N. Y. 329; *O'Reilly* v. *Utah, N. & C. Stage Co.*, 87 Hun, 406, 412; *Matter of Protestant Episcopal School*, 58 Barb. 161; *United States* v. *Heth*, 3 Cranch, 399, 413]."

In *People ex rel. Collins* v. *Spicer* (99 N. Y. 225, 233) it was stated: " This act, like all other statutes, should be so construed as to give effect to the intention of the lawmakers, and if its plain meaning requires that it should be given a retroactive effect, and neither vested rights, existing contracts nor causes of action are thereby destroyed, no reason or rule of construction prohibits it. The general rule, which, in the absence of express language authorizing retroaction, requires a statute to be so construed as to have a prospective effect only, is not, except as to a certain class of statutes, an inflexible one. It is said in 1 Kent's Commentaries, 455, that ' this doctrine is not understood to apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights and only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations.' "

In *Fitzpatrick* v. *Boylan* (57 N. Y. 433) plaintiff filed a mechanic's lien, pursuant to section 6 of chapter 513 of the Laws of 1851, which was at that time in force. Under the law, the lien was continued until judgment was rendered, which judgment superseded the lien and took its place. Subsequently and on May 5, 1863, chapter 500 of the Laws of 1863 was passed, which provided (§ 11) that " liens shall in all cases cease after one year, unless by order of court the lien is continued and a new docket made stating such fact." The lower court held that the plaintiff lost his lien for failure to continue the lien as provided in the 1863 act. EARL, C., writing for the majority of the court, said: " I think that act must have prospective operation only. * * * The clear purpose of the act was to provide a new system as to these liens, and to repeal the old one as to all liens to be thereafter created, but to continue it in force as to all existing liens. This construction is sanctioned and required by the rule of law that every statute shall be construed as having prospective operation only, unless its express letter or clearly manifested intention requires that it should have retroactive effect; and that if all the language of the statute can be satisfied by giving it prospective operation, it shall have such operation only." (Citing cases.) It seems to me that the 1915 act had no retrospective force so far as plaintiff is concerned.

I am further of opinion that the Legislature would not have the power to deprive the plaintiff of the rights he had acquired to the use of his trade name after he filed a certificate according to law in 1905.

It cannot be successfully disputed that the statute in force in 1905 legally established the right of the appellant to the use of the name of " Robert Andrews," and that the right thus acquired

became a valuable vested property right in the plaintiff. It is scarcely necessary to cite authorities for that proposition.

Ruling Case Law (Vol. 6, § 295) states the law applicable to this situation as follows: " Vested rights may be created either by the common law, by statute or by contract. No matter how created they are entitled to the same protection."

In *Rhodes* v. *Sperry & Hutchinson Co.* (193 N. Y. 223) the court was called upon to construe chapter 132 of the Laws of 1903, which was passed to prevent the use of the name or picture of any person for the purposes of trade without his or her written consent. Prior to the enactment of that statute one could lawfully use the portrait of another for advertising purposes without his or her consent.

One of the defenses in the *Rhodes Case (supra)* was that the statute was unconstitutional. The court in passing on that defense said: " The second objection presented for our consideration is that the statute in question is unconstitutional because it applies indifferently to pictures made before and after the enactment, and hence deprives third persons who may own such pictures of their property without due process of law. In support of this objection it is suggested that a person may have acquired the absolute ownership of a portrait before the act of 1903 was passed — at a time when he had the right to use it for advertising purposes under the decision of this court in *Roberson* v. *Rochester Folding Box Co.* [171 N. Y. 538]. The statute, it is said, deprives him of the right thus to use it any longer and, hence, to that extent by limiting its usable quality deprives him of his property. A sufficient answer to this argument is that the act is wholly prospective in its operation and, hence, does not apply to previously acquired pictures at all. Upon portraits, the ownership of which was in others at the time when the act took effect, its provisions are inoperative. Such pictures the owner is still at liberty to use for advertising or trade purposes without being held thereby to have been guilty of a crime or to have committed a tort. His property rights therein are unaffected by the statute." (See, also, *Bullock* v. *Town of Durham,* 64 Hun, 380.)

In *Felix* v. *Devlin* (90 App. Div. 103, 107) the court said: " It appears, however, on the other hand, that the earliest Recording Act in relation to deeds of lands in the city of New York was passed in 1810 (Laws of 1810, chap. 175), and the Legislature passed the General Recording Act in 1813 (Revised Laws of 1813, chap. 97). The Schieffelin grant, therefore, was made at a time when there was no existing Recording Act; and the question is presented whether or not the Legislature has the power to declare deeds or grants, good when made and which were not then required to be

recorded, void as to subsequent purchasers if not recorded pursuant to some later provisions of law. The case of *Varick's Ex'rs. v. Briggs* (22 Wend. 543) is seemingly an authority for the proposition that the Legislature has not the power to render invalid a deed which was good when made, and when there was no Recording Act, by subsequent legislation rendering a failure to record such a deed void as to subsequent purchasers."

I am of the opinion that the order should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to defendant to answer upon payment of said costs.

Clarke, P. J., and Smith, J., concur; Dowling and Page, JJ., dissent.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs, with leave to defendant to answer within twenty days from service of order upon payment of said costs.