BEAL, appellant, v. MILLER.

*Tenants in common — merger.    Title — Estoppel — recitals in deed — beneficiary under will — equitable estoppel.*

V., in 1816, conveyed land to B. and C. taking back from them a mortgage. This mortgage V. asssigned to B. C. and S.    C. took possession of the lands. In 1827, by a deed recorded in that year, the deed of 1816 not being on record, C., for a valuable consideration, conveyed a part of the lands to S., including a six acre wheat lot. In 1828, S. died, and by will, devised the wheat lot to plaintiff, then an infant. By the same will she gave B. a desk worth $25, which he accepted with a knowledge of the provisions of the will. In 1859, plaintiff conveyed an undivided one-half of the wheat lot to

Beal v. Miller.

M. and W., who conveyed the same to defendant. There was evidence tending to show that plaintiff exercised acts of ownership, but plaintiff did not reside near the land, and from 1830 to 1865 there was not a substantial inclosure between the wheat lot and the public road. In 1835, B. by quit-claim deed, which was duly recorded, conveyed the lot to a party, through whom defendant also derived title.

In an action brought in 1871, to recover the undivided one-half part of the wheat lot, *held*, (1) that by the assignment of the mortgage from V., B. C. and S. became tenants in common thereof, and the same was merged as to the interest of B. and C., and that by the conveyance from C. to S. S. acquired title to an undivided one-half part of the premises; (2) that the mortgage contained no evidence of title upon which to maintain ejectment; (3) that the possession of C. was that of B. and C. and not in exclusion of B.; (4) that the recording of the deed of 1827, from C. to S. did not affect the deed of 1816, which was not, by the Revised Statutes, required to be recorded; (5) that defendant was not estopped as to the title to the undivided half of the wheat lot derived through B. by a recital in the deed from C. to S. ; and (6) that B. did not, by his acceptance of the writing desk, estop himself from claiming an interest in the wheat lot, and if he was in equity estopped, such estoppel could not be set up in this action to defeat the title of defendant through him.

The rule, that where a testator attempts to dispose of the property of a beneficiary under a will to another, the beneficiary, if he retains his own property, must make good, out of his own gift, the gift to the other, has been held, not to be applicable where the testator has a present interest in the property disposed of by him, although it is not entirely his own. The rule mentioned is one of equity, and would not apply in an action at law to defeat the title of a stranger who was a purchaser, in good faith, from the beneficiary.

APPEAL from a judgment entered upon the report of a referee. The action was brought in Montgomery county by Harriet Beal against John C. Miller to recover the one equal, undivided half part of a lot of land, situated in the village of Amsterdam, in the county of Montgomery.

These facts appeared upon the trial: On the 1st day of May, 1816, one Harmanus Vedder was the owner of a lot of land situated in the town above named, containing about thirty-four acres, of which the premises in controversy was a part, which he conveyed by warranty deed to George W. Beal and Yelverton Cook, and on the same day said Cook and Beal executed to said Vedder a mortgage on the premises to secure the payment of $3,500. On the 10th of May, 1816, said Vedder, by an instrument indorsed upon said mortgage, in consideration of the sum above mentioned, assigned the said mortgage and granted and sold his interest in the premises

described therein to George W. Beal, Yelverton Cook and Sarah Beal. Cook took possession soon afterward, but the extent and duration of his possession is not shown. On the 15th day of September, 1827, said Cook and his wife, with the knowledge of George W. Beal, conveyed a portion of the premises described in the deed from Vedder, which included the premises in question, in consideration of $1,300, to Sarah Beal, which deed was duly recorded on the 28th of September, 1827. Sarah Beal was the mother of George W. Beal and mother-in-law of Cook, and died in January, 1828, having, prior to her decease, duly made her last will and testament and a codicil which was duly proved after her decease.

A portion of the premises included in the Cook deed to her was a wheat lot of six acres, which six acres or wheat lot was given or devised by the said Sarah Beal by her said will and the codicil thereto in the words following: "I give and devise to my son, William Henry Beal, a piece of land in the town of Amsterdam. aforesaid, near the village of Amsterdam, called the wheat lot, lately in the possession of Zebulon Cook, and contains about six acres, to have and to hold the same to him, the said William, his heirs and assigns forever." And the said Sarah, by a codicil, annulled and revoked the said devise to her said son William, giving and devising by the said codicil the same estate and interest which would have been to her said son William by the will, to his daughter Harriet Beal, the plaintiff in this action. At the time the will and codicil were admitted to probate the plaintiff in this action was an infant, aged seven years, then living with William H. Beal, her father, who resided at Schenectady, about fifteen miles from Amsterdam, and continued to reside with her father until his death in 1871. On the 12th day of May, 1859, said plaintiff sold and conveyed by deed, duly executed and delivered to Jeremiah V. Marcellis and Reuben E. Winegar, one undivided half part or portion of the said premises, the wheat lot. Said deed was recorded in the clerk's office of Montgomery county, on the 14th day of May, 1859. Said Marcellis and Winegar, in the month of June, 1859, aforesaid, went into the possession of the said premises under the deed from plaintiff. There was some evidence tending to show that the plaintiff exercised acts of ownership until the deed was executed in 1859, to Marcellis and Winegar, and the grantees in the deed, or one of them, remained in possession until they transferred the premises and the defendant acquired title to the same.

There was a stone wall on three sides of the lot and the river on the other side soon after the deed from Vedder, but the wall along the highway, as early as 1830, was down so as to offer no protection, and from 1830 to 1865 there was no substantial inclosure.

By the will of Sarah Beal she bequeathed her portable writing desk, which was worth $25 to George W. Beal, which he accepted and retained with full· knowledge of the provisions of the will. On the 28th of August, 1835, George W. Beal executed a quit-claim deed of the wheat lot, with other lands, to David B. Corey, which was duly recorded, and afterward, on the 18th of January, 1836, said Beal and·wife executed another quit-claim deed to the plaintiff, which was also recorded. Corey and wife conveyed to the New York Central Railroad Company, and the title through several intermediate conveyances was transferred to the defendant.

The referee found that the plaintiff had no title by documentary proof or adverse possession, and reported in favor of the defendant. The plaintiff duly excepted to the decision and findings of the referee. On the trial the plaintiff objected to the declarations of William H. Beal made at the time of the delivery of the deed from her to Marcellis and Winegar, which objection was overruled, and the plaintiff duly excepted.

A judgment was entered upon the referee's report, and the plaintiff appealed.

*C. W. White*, for appellant, upon the question of equitable estoppel as to the provisions of a will, by reason of receiving a legacy thereunder, cited 1 Jarm. on Wills, 385; 2 Story's Eq. Juris., §§ 1096–97; *Frank* v. *Frank*, 3 Mylne & Craig, 171; *Havens* v. *Havens*, 15 N. Y. 365; 3 Bacon's Abr. 314 "E."; *Padbury* v. *Clark*, 2 Mac. & G. 298; *Hyde* v. *Baldwin*, 17 Pick. 303; *Smith* v. *Smith*, 14 Gray, 532; *Kennedy* v. *Mills*, 13 Wend. 553.

*S. W. Jackson*, for respondent.

MILLER, P. J. The question presented upon this appeal is strictly one of legal title, and the plaintiff is bound to establish such title before she can maintain this action. The common source of title of both parties is the deed of Harmanus Vedder, in May, 1816, conveying certain premises to George W. Beal and Zebulon Cook, each of whom thus became seized in fee of an equal, undivided one-half thereof. The plaintiff claims title —

*First.*— By virtue of an instrument indorsed upon the mortgage executed by Beal and Cook to Harmanus Vedder, dated May 1, 1816, upon the premises conveyed on the same day by said Vedder to said Beal and Cook, to secure the payment of $3,500, which instrument grants and assigns to George W. Beal, Zebulon Cook and to Sarah Beal, the mother of the plaintiff, from whom she claims to derive title, the premises in the indenture of mortgage particularly described.

*Second.*— Under a deed from Zebulon Cook and wife, dated September 15, 1827, of a portion of the lot including the premises in question, in consideration of $1,500, to the plaintiff's mother, Sarah Beal, which was duly recorded on the 28th of September, 1827. In this connection it is also claimed that Sarah Beal was a purchaser for a valuable consideration, and without notice of the deed from Vedder to Cook and George W. Beal; and her own deed from Cook and wife being on record before the deed of May 1, 1816, had the effect to vest her with the legal title to two-thirds of the premises, under the recording act.

I. As to the instrument or assignment upon the back of the mortgage, which constitutes the first muniment of title, I think that the assignees or grantees became tenants in common of the mortgage, each being entitled to the one undivided one-third part of the same. As Zebulon Cook and George W. Beal, two of the assignees or grantees, were the owners of the equity of redemption, two-thirds of the mortgage became immediately merged in the fee, and it only remained effectual and a lien for the remaining one-third, which was transferred to and owned by Sarah Beal. This one-third could only be enforced against Cook and George W. Beal; and when Cook conveyed to Sarah Beal, one-half of the one-third she previously held became merged in the interest so conveyed, leaving only one-sixth of the amount, which remained a lien upon the undivided half of the land which belonged to George W. Beal.

The deed from Cook to Sarah Beal conveyed the title to the one undivided half of the premises, and she became the owner of the same in fee as to that, with a claim for the one-sixth as mortgagee upon the remaining one-half. Sarah Beal's devise of the wheat lot to the plaintiff only gave her such title as was vested in Sarah at the time of her death, and no more. If the plaintiff became entitled to the interest of Sarah Beal in the mortgage, by the devise to her, it was I think only such an interest as could be enforced by a

foreclosure of the mortgage, when the question could be determined as to the extent of that interest or its validity, after it had remained unpaid for a period of time sufficient to raise a presumption of payment. The mortgage itself, or so much of the same as was vested in Sarah Beal, did not constitute evidence of title which would authorize the mortgagee, or his assigns or representatives, to maintain an action of ejectment for the recovery of the possession of the mortgaged premises or any part thereof. 2 R. S. 312, § 57.

There are other objections to upholding the title of the plaintiff upon any such basis. It had ceased to be a lien by the operation of the statute of limitations, as more than twenty years had expired since a right of action had accrued on the same. And as to David P. Corey and his assigns, it was invalid under the recording act, for the reason that Cory was a *bona fide* purchaser for value, from George W. Beal, and his deed was duly recorded, while the mortgage was never put on record. 1 R. L. 372, § 2.

II. The deed from Zebulon Cook and wife to Sarah Beal conveyed an undivided half of the premises which he had acquired by virtue of the conveyance from Vedder, and there is no evidence that Cook, at this time, had any other or different title from that which he had thus acquired, nor is there evidence that he had ever acquired the title of George W. Beal, or that he ever held possession of the premises in opposition to Beal's title. Cook was a tenant in common with Beal, and whatever possession he had must be presumed to have been for the benefit of himself and his co-tenant. Every legal presumption is in favor of a possession in subordination to the title of the true owner, and unless where possession is taken by one tenant in common, a clear and positive disclaimer and disavowal of the title of his co-tenant, and an assertion of an adverse right is made, and brought to the knowledge of the co-tenant, there is no foundation laid for the operation of the statute of limitations. Such, clearly, was not the fact in the case at bar, and by virtue of the deed in question, Sarah Beal only acquired a title to an equal undivided one-half of the premises in dispute.

The recording of the deed from Cook to Sarah Beal cannot, I think, affect the rights acquired by George W. Beal, under the deed from Vedder to him, because, 1st. The deed from Cook only conveyed his interest in the premises, which was an undivided half, and in no way affected the remaining half, which belonged to George W. Beal. Sarah Beal, therefore, was not a subsequent purchaser

for a valuable consideration within the provisions of the Revised Statutes, so far as George W. Beal's interest was concerned. 1 R. S. 756, § 1.

2d. As the deed to George W. Beal was executed in 1816, the provisions of the Revised Statutes could not affect the recording of it. *Varick* v. *Briggs*, 6 Paige, 323 ; S. C., 22 Wend. 543. At the time when the deed was executed, the law did not require that it should be recorded, and hence the rule invoked has no application. 1 R. L. of 1813, 370, § 4.

It is further insisted that the defendant is estopped from claiming that Sarah Beal was not the owner of the whole of the premises, for the reason that the deed from Cook and wife to her, recites a deed from Harmanus Vedder and wife to Zebulon Cook and Sarah Beal.

The recital in the deed referred to is a statement, after the description of the premises, as follows : " As the same is described in a deed executed to both parties by Harmanus Vedder and his wife." This description may very properly be interpreted as referring to the instrument indorsed on the mortgage, as no other deed is introduced in evidence, and which included George W. Beal as well as the other two persons therein named. Assuming, however, that it did not, it can scarcely be claimed, I think, that the defendant is a party or privy, claiming solely under the deed from Harriet Beal to Marcellis and Winegar, of one-half of the premises, executed in 1859. It is true he claims for one-half under the last-mentioned deed, but he also claims the other half under the conveyance by George W. Beal and wife to David P. Corey, in 1835, and Corey's subsequent conveyance of the premises to the Central Railroad Company, and their intermediate conveyances, by virtue of which he acquired title. If a privy or party, he could only be bound to the extent of his claim, and has a perfect right to maintain his title under another and different source to the one-half not embraced within the conveyance from Harriet Beal. It may also be remarked, that inasmuch as the title derived by the conveyance of Vedder to Cook and George W. Beal dates anterior to the conveyance from Cook to Sarah Beal, the latter must be considered as a grant subject to all rights which had previously been conveyed by Vedder, and cannot in any way affect the interest of George W. Beal, or the parties claiming under him.

The plaintiff's counsel also claims that George W. Beal, by his acceptance of the legacy bequeathed to him by Sarah Beal, lost all

title which he had acquired under the deed of Vedder to him and Cook, in 1816, to the undivided half of the premises. The legacy bequeathed was a writing desk of trifling value, and it is said that the acceptance of this bequest was a renunciation of any title or claim which George W. Beal had to the wheat lot, which by the same will was devised to the plaintiff. The plaintiff seeks to apply a familiar rule in equity, called the doctrine of election, by which one who accepts a benefit under a deed or will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing all rights inconsistent with it; and if a testator has affected to dispose of property not his own, and has given a benefit to the person to whom that property belongs, the legatee or devisee accepting the benefit so given to him must make good the testator's attempted disposition. If he insists on retaining his own property, which the testator has attempted to give to another, equity will appropriate the gift for the purpose of making satisfaction out of it to the persons whom he has disappointed by the assertion of those rights. Jarman on Wills, 385; *Havens* v. *Sackett*, 15 N. Y. 370.

It must be clear beyond any reasonable doubt that he has intentionally assumed to dispose of the property of the beneficiary, who is required on that account to give up his own gift. *Havens* v. *Sackett*, 15 N. Y. 373. There is considerable difficulty in the application of this rule to the case at bar. It is by no means clear that the testatrix intended by the devise to the plaintiff to dispose of more than her interest in the property. Every presumption is in an opposite direction, with no facts or surrounding circumstances to rebut such presumption. This rule is held not to be applicable when the testator has some present interest in the property disposed of by him, although it is not entirely his own. In such a case, unless the intention to dispose of the whole estate, including the interest of third persons, is clearly manifest, he will be presumed to have intended to dispose only of that interest in the property which he might lawfully dispose of. 2 Story's Eq. Jur., § 1089. This principle is applicable to cases where a legacy is given to the wife and not expressed to be in lieu of dower; and it is held, that she is not put to her election. *Fuller* v. *Yates*, 8 Paige, 325; *Church* v. *Bull*, 2 Denio, 430. It is utterly improbable and by no means inferable upon any rational theory, that the testatrix intended to appropriate the property and

an entire one-half interest of her son George W. Beal and bequeath in return for the same the inadequate and small legacy named in the will. This is also a case I think where the expressions employed are of such a character as will admit of being restricted to an interest belonging to and disposable by the testatrix, and therefore will not be held to apply to property over which she had no disposing power within the principle decided in *Havens* v. *Sackett, supra.*

Even if the doctrine contended for is applicable in cases where the intention is plain and clear, it is only a rule in equity, and as the law abhors forfeitures, should not be held to apply in an action at law against an entire stranger and a *bona fide* purchaser for a valuable consideration. While courts of equity may carry out and enforce the intention of parties, and do exact justice between them, and may compel one who has accepted a bequest or devise under a will to renounce all benefits inconsistent with other provisions in which other parties have an interest, I am unable to discover how a court of law can thus defeat a title. It is held, that a devise by one who is not a legal owner cannot transfer the legal title to the property, nor can it operate by estoppel against the legal owner, who is also a beneficiary under the will. *Grettan* v. *Haward*, 1 Swanst. 425, cited in 2 Story's Eq. Jur., § 1080, note. The current of authority upon the question, which has been much discussed, whether the principle governing cases of election under a will is forfeiture or compensation, especially those of a recent date, is strongly and decidedly in favor of the principle of compensation, and it is said by Mr. Justice STORY, that the fair result of the modern leading decisions is, that in such a case there is no absolute forfeiture. 2 Story's Eq. Jur., § 1085 ; 1 Jarman on Wills (Perkins' ed.), 375, 376 ; Willard's Eq. Jur. 545, 546.

The right of the plaintiff therefore to apply the rule in question, if the facts authorize it, is only capable of being enforced in an equitable action against George W. Beal and his grantees who have notice of such equity. Corey being a *bona fide* purchaser from George W. Beal, without any notice that the plaintiff had any latent equity, has a superior equity, I am inclined to think, to that of the plaintiff. The rule in equity is, that as between two parties having equal equities, the prior equity must prevail ; but if the party having the subsequent equity clothes himself with the legal title before he has notice of the prior equity, such legal title must prevail. *Newton* v. *McLean,* 41 Barb. 286. It is therefore difficult to see how,

even in an equitable action, the equitable right of the plaintiff, if any exists, could be enforced against Corey and his grantees.

The counsel for the plaintiff relies upon the case of *Padbury* v. *Clark*, 48 Eng. Ch., 2 MacNaghten & Gordon, 298, as an authority decisive of the question discussed. The case cited is by no means analogous to the one at bar. The former was a bill in equity, and charged that one of the devisees had elected and was bound to do it under the will. The testator was entitled in that case to a fee in an undivided moiety in two houses, and to another undivided moiety in a leasehold house, and by his will devised "all my free-hold messuage or tenements," etc., referring to the two houses only, thus assuming that he was the owner of the whole and not the one-half of the houses. And in another clause devised "all that my moiety or half-part of the whole," etc., in the "leasehold messuage," etc., to the defendant. It was held, that the words first used were a gift of the entirety, and raised a question of election as against the party entitled to the other moiety who took beneficially under the will, and that this construction was corroborated by the fact of the testator having used *apt words* in disposing of his interest in the leasehold. The devisee would thus have received some compensation in return for the estate, which would have been surrendered by an election to take under the will. The lord chancellor decided that the defendant had not elected; but as the rents were received by the trustee of the defendant, or her father, for her use, and she had elected to take against the will, she was bound to make good to the disappointed party the value of the property intended for her. The decision in the case last cited was based upon the principle of compensation, and a note at the close of the case lays down the rule, that the doctrine of election proceeds upon the ground of compensation and not of forfeiture, citing numerous authorities to sustain this principle. There is not a reported case in the books which I have discovered, that maintains the doctrine that the principle contended for can be invoked in an action of ejectment against an entire stranger to defeat a legal title acquired from one who held a valid conveyance of the fee, and had parted with the same to a purchaser.

The plaintiff has shown no such prior possession as against the defendant which entitles her to maintain this action, and as she was only entitled to an equal undivided half of the property which on the 12th day of May, 1859, she conveyed to Marcellis and Winegar,

has proved no title whatever to the premises in question. As the plaintiff proved no legal title, and must recover upon the strength of her own title, and not on the defects in the title of her adversary, it is not necessary to examine and consider the character of the defendant's title.

I think there was no error in the admission of evidence, and even if the declarations of William Beal were objectionable, that they could not affect the result of the case.

· The decision of the referee was right, and the judgment entered thereon must be affirmed, with costs.

<em>Judgment affirmed.</em>