*367
 
 Vast Voorhis, J.
 

 The defendants appeal on constitutional grounds from a judgment entered on a submission of controversy, declaring defendants barred from all right, title or interest in real property in the Village of Walton, Delaware County, and that plaintiff is vested with title thereto in fee simple absolute.
 

 On May 11, 1854 there was recorded in the Delaware County Clerk’s office a deed from John Townsend and wife to the trustees of the Walton Academy subject to the proviso: “ Provided nevertheless that the said lot and the building thereon shall be used for the purposes of an Academy and no other then this deed shall remain in full force and effect otherwise it shall become Void and the premises herein conveyed shall revert to the said John Townsend party of the first part and to his heirs.”
 

 It was used for educational purposes by the Walton Academy, its successors or assigns, until April 1, 1962, when its use for such purposes was discontinued.
 

 Eugenia T. Miles and John Townsend (defendants-appellants) are the sole heirs at law and devisees of the now deceased grantor. Plaintiff-respondent has succeeded to the rights of the Walton Academy.
 

 This action or proceeding has been instituted to obtain a judicial determination of appellants’ claim that they have been entitled to possession of the aforesaid premises, vested with title in fee simple absolute as tenants in common since April 1, 1962, when use for school purposes was discontinued.
 

 Unless their reversionary interest has been extinguished by section 345 of the Real Property Law (enacted by L. 1958, ch. 865), appellants’ contention is correct
 
 (Nichols
 
 v.
 
 Haehn,
 
 8 A D 2d 405). This legislation emanated from reports of the Law Revision Commission (N. Y. Legis. Doc., 1951, No. 65, pp. 695-780; 1958, No. 65, pp. 211-374). It was enacted by chapter 865 of the Laws of 1958 along with what are now sections 1951 through 1955 of the Real Property Actions and Proceedings Law, also recommended by the Law Revision Commission at the same time and originally enacted by chapters 863, 864, and 866 of the Laws of 1958. These statutes were designed to limit or extinguish nonsubstantial restrictions on the use of land, possibilities of reverter or right of entry on
 
 *368
 
 failure of conditions subsequent and similar interests in real property. The section whose constitutionality is challenged on this appeal (Real Property Law, § 345) was thus described in the 1958 Report of the Law Revision Commission (p. 217): “Its purpose is to provide for recording of a ‘declaration of intention to preserve ’ certain interests in land arising from ancient restrictions on the use of land and to extinguish such interests if such declarations of intention are not recorded within the time provided.” This section is not limited to the elimination of what the report of the commission calls “ old and useless ” restrictions, but falls rather within the category thus described at pages 712-713 of its 1951 Report: “It is almost certain that an appreciable number of owners of old but useful restrictions will lose them without countervailing compensation, through failure to record the declaration which, under the statute, would be prerequisite to their continued life. Such failure might occur under a variety of circumstances. Unless the owner for some reason had regular occasion to watch for new legislation, or unless he frequently engaged in real estate transactions, he might never learn of the enactment of the proposed requirement.”
 

 The object of requiring declarations of intention to preserve rights of reverter and of re-entry on breach of condition subsequent, and periodic renewal of such recording, is not in furtherance of the usual purpose of recording acts, as succinctly stated in an often-quoted excerpt from
 
 Jackson ex dem. Merrick
 
 v.
 
 Post
 
 (15 Wend. 588, 594): “ The object of the recording acts is to prevent frauds — to prevent the person having title to land from selling it more than once, and thereby defrauding one or more of the purchasers. The object of recording is to give notice to all the world that the title has passed from the vendor to the vendee. If the vendee neglects to record his deed, in consequence of which another person purchases
 
 bona fide,
 
 such vendee, so neglecting to record his deed, loses his title; but if the second purchaser has
 
 actual notice
 
 of the first conveyance, he is not a
 
 bona fide
 
 purchaser. The record of the first deed is constructive notice of the fact of the existence of the deed; if, however, actual notice has been given to the second purchaser, he cannot complain of Avant of constructive notice.”
 

 
 *369
 
 Section 345 of the Real Property Law appears not to have been designed to protect subsequent purchasers for value and without notice, but for an object more akin to that of title registration acts which are designed to perfect the marketability of titles (see Real Property Law, art. 12, §§ 370-435, known as the Torrens Act;
 
 American Land Co.
 
 v.
 
 Zeiss,
 
 219 U. S. 47, relating to the registration of titles in California to remedy the confusion and uncertainty resulting from the San Francisco earthquake and fire of 1906).
 

 The constitutionality of section 345 of the Real Property Law is challenged on this appeal on the grounds that it impairs the obligation of a contract and deprives appellants of property without due process of law. No such question could arise in regard to conveyances delivered after the adoption of this statute, but it is a familiar rule that retrospective legislation, unless adopted in pursuance of the police power, cannot impair vested rights
 
 (Matter of Pardee
 
 v.
 
 Rayfield,
 
 192 App. Div. 5, affd. 230 N. Y. 543).
 

 The alteration of the rights of the grantee in an unrecorded conveyance is incidental to preventing the perpetration of fraud upon subsequent purchasers or mortgagees in good faith. Since grantees in successive conveyances cannot each get good title to the same property from the same grantor, the Constitution permits the earlier unrecorded deed to be invalidated to prevent a subsequent bona fide purchaser from being defrauded. Statutes may be enacted under the police power to prevent fraud or oppression in business or commercial transactions
 
 (People
 
 v.
 
 Arlen Serv. Stas.,
 
 284 N. Y. 340), and, if within the scope of the police power, legislation is not invalid even though there be retrospective modification of private contractual obligations
 
 (Twentieth Century Assoc.
 
 v.
 
 Waldman,
 
 294 N. Y. 571, 580). Upon the other hand, such legislation is unconstitutional and void if it is not related to the public safety, health, welfare or morals so as to come within the police power
 
 (Weiler
 
 v.
 
 Dry Dock Sav. Inst.,
 
 258 App. Div. 581, 584, affd. 284 N. Y. 630). The prevention of fraud against subsequent purchasers has been generally recognized as a foundation on which the police power depends in voiding prior unrecorded conveyances for, ‘ Though the effect of such a law is to render the prior deed
 
 *370
 
 fraudulent and void as against a subsequent purchaser, it is not a law impairing the obligation of contracts ”
 
 (Jackson ex dem. Hart
 
 v.
 
 Lamphire,
 
 3 Pet. [28 U. S.] 280, 290;
 
 McCracken
 
 v.
 
 Hayward,
 
 43 U. S. 608). Quite possibly decisions such as
 
 Jackson ex dem. Hart
 
 v.
 
 Lamphire, Curtis
 
 v.
 
 Whitney
 
 (80 U. S. 68),
 
 Fitzpatrick
 
 v.
 
 Boylan
 
 (57 N. Y. 433; see dissenting opn. by Commissioner Dwight),
 
 Leonard
 
 v.
 
 Harris
 
 (147 App. Div. 458, affd. 211 N. Y. 511) may have overruled
 
 Varick’s Executors
 
 v.
 
 Briggs
 
 (22 Wend. 543, 546) which held a recording act to be unconstitutional that, by its terms, applied to existing deeds. Nothing in any of those decisions goes beyond holding that, if an unrecorded conveyance has been executed and delivered prior to the adoption of a recording act, the Legislature can thereafter enact that unless it be recorded within a reasonable time after the adoption of the statute, other conveyances from the same source of title made subsequent to the statute would take precedence if delivered to purchasers for value and without notice. “ It is within the undoubted power of state legislatures to pass recording acts,” said the Supreme Court in
 
 Jackson ex dem. Hart
 
 v.
 
 Lamphire (supra,
 
 p. 290), “ by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within the limited time; and the power is the same, whether the deed is dated before or after the passage of the recording act.” As in the case of the shortening of a Statute of Limitations, a reasonable time must be provided after the passage of the act for the prior deed to be recorded
 
 (Meigs
 
 v.
 
 Roberts,
 
 162 N. Y. 371). In this view of the,case it is not particularly important whether
 
 Varick’s Executors
 
 v.
 
 Briggs
 
 has been overruled. Assuming, without deciding, that it is no longer law and that recording acts can be adopted which apply to earlier conveyances provided that a reasonable opportunity is afforded for 'their subsequent recording, this would not support the constitutionality of section 345 of the Beal Property Law unless it be truly a recording act. The section is not drawn for the protection of subsequent purchasers in good faith, so as to uphold the constitutionality of the impairment of a property right (the contingent possibility of reverter) on the basis previously mentioned that it invokes the police power as a precaution against defrauding later innocent purchasers. What this statute purports to do is—in the absence of recording
 
 *371
 
 — to extinguish reverters based on conditional limitations in deeds as between the parties themselves, or their successors, and without the justification of protecting the intervening rights of third persons. It will be recalled that the opinion in
 
 Jackson ex dem. Hart
 
 v.
 
 Lamphire (supra)
 
 indicates that the prevention of fraud against -third parties is the justification for altering the obligation of the contract between the parties to the earlier unrecorded deed, and it was in this context that the language was used that prevention of fraud upon others is what brings within the police power the voiding of the earlier deed regardless of whether it was delivered before or after the enactment of the applicable recording act. Except for the protection of third parties, the
 
 Jackson
 
 case and others cited in the same context would indicate that the recording acts would impair the obligation of contracts and deprive persons of property without due process of law. For reasons hereafter stated, it is not necessary on this appeal to decide the constitutional validity in all instances or for all purposes of requirements of recording in order to continue the validity of rights secured by an instrument as between the parties themselves, but it is clear that they are not supported by the traditional constitutional basis upholding recording acts. The ‘ ‘ recording ’ ’ of the declarations of intention prescribed by section 345 of the Real Property Law as essential to the continued validity of possibilities of reverter would, on that theory, be not sustainable as within the police power for the reason that they alter the obligation of a deed as between the parties to it and their successors, without necessarily doing so for the protection of bona fide subsequent grantees.
 

 If the “ recording ” requirements of section 345 of the Real Property Law are to be sustained, therefore, it would be on a theory more nearly analogous to the registration of titles rather than to the recording acts. In this regard they bear some resemblance, also, to the marketable title acts which have been adopted in different forms in about nine different States (see, e.g., Paul E. Basye, Trends and Progress — The Marketable Title Acts, 47 Iowa L. Rev. 261 [1961-1962]; Ralph W. Aigler, Constitutionality of Marketable Title Acts, 50 Mich. L. Rev. 185 [1951] and A Supplement to “ Constitutionality of Marketable Title Acts ”-1951-1957, 56 Mich. L. Rev. 225). Those acts,
 
 *372
 
 whose main object is to render titles marketable without a lengthy back title search, where an owner is in possession and can show record title in fee simple absolute in himself or his grantors for a preceding limited period of years, contain provisions extinguishing in the absence of recqrding interests, claims or charges whose existence depends upon acts, transactions, events or omissions that occurred prior to the commencement of the period in question. It will be noted that such clauses purport to terminate earlier adverse interests against an owner in possession showing record title for the period of years enumerated in the statute. Those statutes, although not entirely analogous to our section 345 of the Real Property Law, have a common characteristic in that failure to record or renew the recording of a declaration of intention to preserve the adverse claim results in its extinction for the benefit of the person in possession, without necessarily involving any third parties. If the “recording” provisions in section 345 be constitutional, there must be some relationship to the purposes of the police power in clearing titles from contingent reversionary interests in this manner. The registration of titles, as well as the marketable title acts, are not designed primarily to extinguish valid but inconvenient claims. It has been said that the object and purpose of a title registration act is “ ‘ to register good titles, not to cure bad ones ’ ”
 
 (Partenfelder
 
 v.
 
 People,
 
 211 N. Y. 355, 357).
 

 However that may be, and without ruling upon the constitutionality of the other portions of section 345 of the Real Property Law or of marketable title acts in general, about which we express no opinion, we consider the particular portion of .section 345 of the Real Property Law which applies to the facts of this case to be constitutionally invalid. It is not overlooked that under the Minnesota Marketable Title Act (Minn. Stat., § 541.023) the Supreme Court of that State recently voided a reverter expressly drawn to take effect if the property ceased to be used for school purposes
 
 (Wichelman
 
 v.
 
 Messner,
 
 250 Minn. 88, Ann. 71 ALR 2d 846). That decision has been criticized by two of the leading exponents of marketable title acts, Professor Ralph W. Aigler (56 Mich. L. Rev. 225, 232-233 [1957]) and Professor Paul E. Basye (47 Iowa L. Rev. 261, 279 [1962]), on the ground that the decision may not have be;en warranted by the Minnesota statute inasmuch as there, as here,
 
 *373
 
 the parties seeking to defeat the reverter could not establish record title in fee simple absolute during the 40 years prescribed by the Minnesota statute, inasmuch as the only paper title which the school district had consisted of the deed containing the conditional limitation. The Minnesota statute means what the Minnesota Supreme Court says it means, but that does not diminish the constitutional difficulty in the case now before us. Assuming
 
 arguendo
 
 that such a statute would be upheld here, which, of course, is not decided, the fact was in the Minnesota case of
 
 Wichelman
 
 v.
 
 Messner
 
 that the real property ceased to be used for school purposes in 1946 whereas the action to enforce the reverter was not begun until 1952. Prior to the commencement of that action, no form of re-entry had been attempted, nor had there been any notice filed or recorded to preserve the reverter under the applicable section of the Minnesota act. In the case at bar, subdivision 4 of section 345 provides that the declaration to preserve the reverter must be recorded on or before September 1, 1961 if the date when the special limitation was created was prior to September 1, 1931. In this instance, as has been stated, the deed to the trustees of the Walton Academy containing the reverter clause was recorded prior to 1931, and the property continued to be used for school purposes until 1962. That is to say, the reverter had not matured at the time when the statute prescribed that it became barred, nor could anyone have known prior to the cut-off date who would be parties in interest at the time when the reverter took effect. If subdivision 4 of section 345 of the Real Property Law be valid under these circumstances, at least, it would be necessary for unascertained persons, perhaps not even in being, to have recorded a declaration of intention to preserve a reverter which would not take effect in enjoyment until an indefinite future time. This makes the case resemble more nearly
 
 Biltmore Vil.
 
 v.
 
 Royal
 
 (71 So. 2d 727 [Fla.], Ann. 41 ALR 2d 1384), decided by the Florida Supreme Court in 1954, which concerned a statute canceling all reverter provisions in plats or deeds in effect for more than 21 years containing a saving clause giving to the holder of the reverter interest one year from the date of the act to institute suit to enforce the right. That statute was held to be unconstitutional as impairing the obligation of the contract contained in the deed, and depriving the reversioner
 
 *374
 
 of its property without due process of law, in a case where the event actuating the reverter occurred after the expiration of the statutory year’s limitation. Under the circumstances of the case at bar, section 345 cannot be sustained as a Statute of Limitations since it purports to bar the remedy before the right to enforce it has matured
 
 (Meigs
 
 v.
 
 Roberts, supra; Mullene
 
 v.
 
 Central Hanover Trust Co.,
 
 339 U. S. 306, 313-314).
 

 We rule on no other aspects of section 345. of the Real Property Law.
 

 The judgment appealed from should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to the Appellate Division for the entry of a judgment declaring that appellants are vested with title in fee to the property free from any claim of the plaintiff thereto.
 

 Judges Dye, Burke and Scileppi concur with Judge Van Voorhis; Chief Judge Desmond and Judge Fuld dissent and vote to affirm upon the opinion at the Appellate Division; Judge Bergan taking no part.
 

 Judgment reversed, with costs in this court and in the Appellate Division, and matter remitted to the Appellate Division for further proceedings in accordance with the opinion herein.