*409 OPINION OF THE COURT
Norman A. Mordue, J.
Richard J. Long and Mary Long, his wife, by warranty deed dated September 30, 1949, and recorded in the office of the Onondaga County Clerk on November 15, 1949, conveyed to defendant’s predecessor, Pompey Hill Fire Department, a parcel of land (hereinafter referred to as P-1) located on Route 91 near its intersection with Route 20, in the Town of Pompey. P-1 was conveyed by the grantors to the defendant for the purpose of "erecting thereon a fire house”. The grantors retained a right of reentry which reads as follows: "In the event that the said premises are no longer used to house a fire department, then and in that event the land and building erected thereon is to revert to Richard J. Long and Mary Long, or their heirs and assigns.”
The plaintiffs in this action are the heirs at law of the grantors, Richard J. Long and Mary Long. Plaintiff Paul W. Long and his wife reside in the residence immediately adjacent to P-1 and also own the land which surrounds P-1 on all sides except the east, whereat P-1 is bounded by Route 91. The defendant, Pompey Hill Volunteer Fire Department, Inc., was originally incorporated on August 12, 1952 under article II of the Membership Corporations Law and is a fire corporation under section 1402 of the Not-For-Profit Corporation Law.
Shortly after said conveyance, a firehouse was erected on P-1. The building is a two-story structure with a cinder block first floor and a wood frame second floor. The first floor contains three large bays to house fire trucks and equipment. The building was used continuously from 1950 until approximately November 1985 to house defendant Fire Department.
By deed dated October 11, 1984, the defendant acquired another parcel of land (hereinafter referred to as P-2). This property contains the former Pompey Elementary School and is located approximately 300 yards from P-1. The defendant spent approximately one year having the building at P-2 remodeled, including adding several large vehicle bays. In November 1985, defendant moved its essential equipment plus the majority of its functions into P-2.
The issue now before this court is whether P-1 is still being used to "house a fire department”. Based upon the credible evidence adduced at trial, I find that P-1 has been used as follows.
Originally, the building on P-1 housed all activities includ *410 ing meetings, the maintenance and storage of equipment, the maintenance and storage of vehicles, training programs, and fund-raising activities. In addition, P-1 had running water, toilet facilities, and heat, and was well maintained. P-1 had a telephone system installed and was the official address for the defendant. The building on P-1 was the response place where the firefighters would go to get equipment at emergency times. The use of P-1 to house the Fire Department in the above-stated manner continued for several decades and until 1984.
When the defendant bought its new building at P-2 in 1984, most activities at P-1 stopped. The last monthly meeting held at P-1 was in the winter of 1984. The telephone as well as the water pump were disconnected, thereby precluding lavatory use as well as outside communication. P-1 was no longer used for storage of emergency vehicles or equipment, nor was it used for training programs.
For all intents and purposes, P-1 was virtually abandoned by the defendant from the fall of 1985, through the summer of 1986. The classrooms were gone, no longer were any chairs in the building, snow was no longer removed, telephone services were removed, lavatories were inoperable due to removal of water, heat was turned off, and the outside of the building was no longer being maintained although it was in need of paint and repair. In addition, the 1986-1987 telephone book listed P-2 as defendant’s address. The evidence reflects that this state of disuse and unkemptness continued until 1988.
After the demand for delivery of real property was served on the defendant on June 3, 1986, and as the instant lawsuit came closer to fruition and resolution, activities increased at P-1. A few training sessions covering extrications and first aid of car accident victims were held. In addition, a bus that had always been parked across the street in a vacant parking lot was suddenly being stored in P-1. To demonstrate "activity” at P-1, in 1988, defendant conducted a series of air-mask training programs at P-1.
At the present time, P-2 houses the fire department’s activities. All matters dealing with fund raising and medical training are conducted at P-2. In addition, the mandatory monthly meetings are held at P-2. Furthermore, at the present time, there are approximately 1,200 square feet of space in P-2 that are not being used by the defendant. Hence, there appears to be no reason for P-1 to be used by the defendant despite the fact that there is still a siren located at P-1 that is automati *411 cally tested every day at 12 o’clock noon. The testing of the siren appears to be the only use to which P-1 is devoted by the defendant.
Based on the foregoing, this court finds that the defendant no longer uses the conveyed premises (P-1) to "house a fire department”. As such, the land and building erected thereon should revert to Richard J. Long and Mary Long or their heirs or assigns, the plaintiffs herein.
Defendant, however, contends that section 345 of the Real Property Law extinguished the possibility of reverter in this case due to the failure of the plaintiffs to file a declaration of intention to preserve the said restriction on P-1 in a timely fashion. Section 345 requires the filing of such a declaration not less than 27 years nor more than 30 years after the condition subsequent or special limitation described therein was created.
P-1 was conveyed by deed dated September 30, 1949 and filed November 15, 1949. Therefore, the defendant contends, a declaration must have been filed between 1976 and 1979 in order to preserve the possibility of reverter. The defendant further contends that since no filing was made, the possibility of reverter was extinguished and the defendant owns the land free and clear. Plaintiff contends that section 345 of the Real Property Law was held unconstitutional by the Court of Appeals in Board of Educ. v Miles (15 NY2d 364).
In Miles (supra), the plaintiff was the successor in interest of property deeded to it in 1854. The defendants were the heirs at law and devisees of the grantor who conveyed the property. The property was conveyed with a reversionary interest to the defendants.
The court in Miles (supra, at 372) examined section 345 and determined that subdivision (4) of that statute was constitutionally invalid.* The court found the subdivision unconstitutional because "the reverter had not matured at the time when the statute prescribed that it became barred, nor could *412 anyone have known prior to the cut-off date who would be parties in interest at the time when the reverter took effect. If subdivision 4 of section 345 of the Real Property Law be valid under these circumstances, at least, it would be necessary for unascertained persons, perhaps not even in being, to have recorded a declaration of intention to preserve a reverter which would not take effect in enjoyment until an indefinite future time” (supra, at 373). The court concluded that "under the circumstances * * * section 345 cannot be sustained as a Statute of Limitations since it purports to bar the remedy before the right to enforce it has matured” (supra, at 374, citing Meigs v Roberts, 162 NY 371; Mullane v Central Hanover Trust Co., 339 US 306, 313-314).
In the case at bar, a similar situation exists. Subdivision (4) of section 345 of the Real Property Law required the plaintiffs herein to file the declaration of intention prior to the cutoff date of a determination of who would be parties in interest. Since the deed was recorded in 1949, the declaration would have had to have been filed not later than 1979, prior to the discontinued use of P-1 which was the triggering event for the reverter to take effect. Accordingly, under the authority of Miles (15 NY2d 364, supra), this court must find that subdivision (4) of section 345 of the Real Property Law, as it applies to the facts of this case, is unconstitutional. Therefore, plaintiff’s failure to file the declaration of intention pursuant to an unconstitutional statute does not defeat the reversionary interest.
Defendant also contends that RPAPL 1955 allows for the modification or extinguishment of certain restrictions on the use of land held for charitable purposes. The defendant alleges that the restriction contained in the deed requires the defendant to continue to house the Fire Department at P-1, which defendant states it has done. Defendant contends that the wishes of the grantors have been continually abided by since the construction of the Route 91 firehouse. The defendant seeks the removal of the restriction on the property contending that the restriction has substantially impeded the defendant from securing a long-term mortgage on said property. The defendant claims that the funds sought through this mortgage would be used in the upkeep of the firehouse and in continued Fire Department activities held at the Route 91 station. The defendant cites Trustees of First Cong. Church v American Home Missionary Socy. (59 Misc 2d 717) in support *413 of its contention that the restriction contained in the deed should be extinguished.
In First Cong. Church (supra), the restrictive clause in the deed provided for the property to be used for the benefit of the church, but should the church become extinct, the property would be deeded over to the defendant, American Home Missionary Society. The court in First Cong. Church decided that the language in the restriction was clear and unambiguous and stated that the property was to revert to defendant only if the church became extinct. The court found that the extinction had not occurred nor was it likely to ever occur. The court further found that by eliminating the restriction, the property could be sold and would continue to benefit the church, which was the grantors’ intent.
In the case at bar, a different situation exists. Here, the grantors specifically restricted the use of the land to housing the Fire Department. The court has found that the defendant no longer houses the Fire Department at P-1. The court further finds that the primary purpose of the special limitation was to restrict the use of the land and that the purpose of the restriction was to insure that the land itself, rather than simply the value of the land, be devoted to and employed for the purpose of housing a fire department. Therefore, defendant’s argument pursuant to RPAPL 1955 must fail.
Accordingly, the plaintiffs are immediately vested with title in fee simple absolute to the property, free from any claim of the defendant thereto. Plaintiffs’ claim for $50,000 damages is dismissed for insufficient proof.

 Subdivision (4) of section 345 of the Real Property Law reads, in pertinent part, as follows: "An initial declaration may be recorded in the office in which a conveyance of the land described in the declaration would be recordable or registrable, not less than twenty-seven years nor more than thirty years after the condition subsequent or special limitation described therein was created; provided, however, that if the date when such condition subsequent or special limitation was created was prior to September first, nineteen hundred thirty-one, the declaration. may be recorded on or before September first, nineteen hundred sixty-one.”