■ CATHEDRAL OF THE INCARNATION IN THE DIOCESE OF LONG ISLAND, INC., Respondent, v GARDEN CITY COMPANY, Appellant,

ATTORNEY GENERAL OF THE STATE OF NEW YORK, Respondent, et al., Defendants. [697 NYS2d 56] —In an action pursuant to RPAPL 1955 to modify or extinguish restrictions on the use of land held for charitable purposes, the defendant Garden City Company appeals from an order and judgment (one paper) of the Supreme Court, Nassau County (Winslow, J.), entered August 20, 1997, which, upon granting the plaintiff's motion for summary judgment on the complaint, is in favor of the plaintiff and against, among others, the defendant Garden City Company, and, *inter alia*, extinguished the challenged deed restrictions.

Ordered that the appeal from so much of the order and judgment as is against parties other than the appellant is dismissed, as the appellant is not aggrieved by that part of the order and judgment; and it is further,

Ordered that the order and judgment is affirmed insofar as reviewed, with one bill of costs.

By deed dated November 20, 1891, the heirs of Cornelia Stewart (hereinafter the Stewart heirs) sold to the Cathedral of the Incarnation in the Diocese of Long Island, Inc. (hereinafter the Cathedral), for the sum of $43,247.50, two parcels of real property in Garden City. Pursuant to a restriction contained in the deed, the premises were conveyed to the Cathedral "and its successors forever for the use of the Protestant Episcopal Church in the Diocese of Long Island but without any power, right, or authority to grant, convey, or mortgage the same or any part thereof in any way or manner whatsoever". The deed also contained the further restriction that the premises were not to be "used or occupied for any other use or purposes than as sites or grounds for buildings or institutions connected with said Cathedral and devoted to its religious uses or educational purposes".

In 1893 the Stewart heirs conveyed to the predecessor of the defendant Garden City Company (hereinafter the Company) certain other property in Garden City which Cornelia Stewart had also owned, inclusive of "[a]ll the right, title, property and interest of the [Stewart heirs], or any of them in and to any reversion or remainder in all or any of the lands conveyed to the said The Cathedral of the Incarnation in the Diocese of Long Island". The Cathedral continued to own and occupy the demised premises in accordance with the restrictions contained in the deed from the time of the conveyance in 1891 until the commencement of this action.

In 1993 the Cathedral, which was in severe financial distress, filed a voluntary petition in bankruptcy pursuant to Chapter

11. The United States Bankruptcy Court for the Eastern District of New York (Holland, J.), by stipulation and order dated October 28, 1993, directed that certain properties owned by the Cathedral be sold. In addition, the Cathedral entered into a contract to sell other portions of the property.

The Cathedral thereafter commenced this action pursuant to RPAPL 1955 to modify or extinguish the restrictions and for authorization to dispose of the land pursuant to the contracts of sale. In a verified answer with counterclaim, the Company asserted, *inter alia*, that it was the successor to all the rights, title, interest, and claims that belonged to the Stewart heirs, that the deed from the Stewart heirs to the Cathedral conveyed less than a full fee title so that the Company had the right thereunder to assert ownership of the property upon its cessation of use for religious purposes by the Cathedral, that the restrictions in the deed created either a condition subsequent or a conditional limitation, and that RPAPL 1955 as applied to extinguish the Company's interests was unconstitutional. The Cathedral subsequently moved for summary judgment.

By decision dated July 1, 1997, the Supreme Court, Nassau County, found that the Cathedral was entitled to summary judgment. The court observed that although a right of reentry (now known as a right of reacquisition; *see,* Turano, Practice Commentaries, McKinney's Consolidated Laws of NY, Book 17B, EPTL 6-4.6, at 81-82) arose from the Cathedral's deed, the Company, as an assignee, could not enforce it since, when the deeds were made, the right of reacquisition was not assignable, devisable, or descendible. The court then noted that the circumstances of the case fell within the scope of RPAPL 1955, and that the Cathedral's application to extinguish the restrictions should therefore be granted. The court found that "to require the [Cathedral] to hold the land in perpetuity is unconscionable". Moreover, the court stated that the Company had failed to establish its entitlement to any damages. The court also noted that the Company's attack on the constitutionality of the statute was wholly conclusory, and that the Company had failed to meet its burden of proof on its contention. An order and judgment was thereupon entered granting summary judgment in favor of the Cathedral. We affirm.

The insistence by the Company that, for the purposes of applying RPAPL 1955, the court merely had to find that some kind of reversionary interest existed, without determining the specific reversionary interest created by the deed, is unpersuasive. Notably, the Company, in arguing that the court erred in finding that a possibility of reverter did not exist, appears to

concede that the deed created either a possibility of reverter or a right of reentry. The Company, however, fails to cite any case law or language in the deed to support its claim that the deed created a possibility of reverter in the grantors rather than a mere right of reentry. Thus, contrary to the Company's position, absent any language in the deed itself providing for the automatic termination of the Cathedral's estate if the land were no longer used for church purposes, the court properly concluded that the deed created a right of reentry. Under the common law at the time the Stewart heirs made the deed to the Cathedral in 1891 and the deed to the Company in 1893, the right of reentry was not assignable or devisable (*see, Upington v Corrigan,* 151 NY 143, 147-148; *Vail v Long Is. R. R. Co.,* 106 NY 283). Therefore, any right of reentry would be rendered void by any attempt by the Stewart heirs to assign it to the Company (*see, Board of Educ. v Greene,* 112 AD2d 182, 184; *United Methodist Church v Dobbins,* 48 AD2d 485, 486). The case of *City of New York v Coney Is. Fire Dept.* (259 App Div 286, *affd* 285 NY 535), cited by the Company to support its claim that the court erred in concluding that the deed restrictions did not create a possibility of reverter, is inapposite.

Moreover, with respect to the contention by the Company that in interpreting a deed, the intent of the grantors should prevail, there is nothing in the language of the deed nor in the record as a whole to support the conclusion that the Stewart heirs intended the Cathedral's estate to terminate automatically if the land were used for other than church purposes.

The Company's challenge to the court's application of RPAPL 1955 to extinguish the restrictions must also fail. RPAPL 1955 (3) provides that the Supreme Court, in determining whether to grant relief from certain restrictions upon the use of land held for charitable purposes, must consider and make findings with respect to various factors as set forth in the statute.

Although the Cathedral concedes that the restriction required that the land itself rather than the substantial value of the land be used for church purposes (*see,* RPAPL 1955 [3] [b]), as the Supreme Court observed, that factor alone is not determinative (*cf., Long v Pompey Hill Volunteer Fire Dept.,* 143 Misc 2d 408, *affd* 167 AD2d 976). Under the statutory framework, the inquiry then turns to whether the existence of the restriction substantially impedes the owner of the property in the furtherance of the purpose for which the land is held (RPAPL 1955 [3] [c]). Contrary to the suggestion of the Company, the approval by the Bankruptcy Court of the sale as part of a Chapter 11 reorganization plan, and the deposition

testimony of Frederick Reuss, the Chancellor of the Cathedral, provided sufficient evidence that continued ownership of the properties is a burden and a drain on financial resources that could otherwise be used to provide programs and services to the community. The Company failed to present any evidence to the contrary, and its conclusory assertion that both a trial and expert testimony are needed to determine whether the restrictions substantially impede the Cathedral in the furtherance of the purpose for which the land is held must be rejected.

Moreover, the Company has not demonstrated its entitlement to damages under RPAPL 1955 (4) (e), which provides that the court, in its discretion, may award damages "for such injury as a party to the action may sustain by reason of extinguishment or modification of the restriction". Notably, although Morton Kassover, a Vice President of the Company, testified at his deposition that construction of "smaller" homes could have a negative impact on the Company's commercial properties, there is nothing in the record to substantiate such speculation. Moreover, Kassover's conclusory assertions were insufficient to raise any factual issue as to how the Company would be damaged by the extinguishment of the restrictions.

Equally without merit is the Company's attack on the constitutionality of RPAPL 1955 as applied to it. In the first place, the Company's discussion assumes that it does have a constitutionally-protected property interest arising from the 1891 deed. However, as the Supreme Court correctly held, that deed created a right of reentry in the grantors that was not assignable, and any such right is now therefore void and nonexistent. It is well settled that where there is no legitimate claim of entitlement to the property interest affected by a governmental decision, the requirements of procedural due process do not apply (*see, Board of Regents v Roth,* 408 US 564).

Further, the Company's argument appears to rely entirely on the suggestion in 3 Warren's Weed, New York Real Property, Conditions and Limitations §§ 15.13, 16.06 (4th ed), that RPAPL 1955 is of questionable constitutionality in light of the decision of the Court of Appeals in *Board of Educ. v Miles* (15 NY2d 364). However, *Board of Educ. v Miles* (*supra*) dealt only with Real Property Law § 345, which provided for the automatic extinction of interests in property upon the failure of the holder of that interest to record, within a specified time period, a declaration of intention to preserve it. Thus, the decision in *Board of Educ. v Miles* (*supra*) has no bearing on the instant case.

The Company's remaining contentions are without merit. O'Brien, J. P., Joy, Friedmann and Goldstein, JJ., concur.